In the

# United States Court of Appeals

### For the Seventh Circuit

No. 02-2458

SPHERE DRAKE INSURANCE LIMITED,

*Plaintiff-Appellant*,

*v.*

ALL AMERICAN LIFE INSURANCE COMPANY,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 01 C 5226—**Rebecca R. Pallmeyer**, *Judge*.

ARGUED SEPTEMBER 9, 2002—DECIDED OCTOBER 9, 2002

Before EASTERBROOK, KANNE, and EVANS, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Two underwriters cannot agree about whether seven policies of reinsurance are valid—or for that matter about who decides whether they are valid. All American, which contends that the contracts are effective, says that the dispute should be arbitrated. Sphere Drake, which denies the documents' binding quality, believes that a court should resolve the question. Last year we concluded that disputes about one of the seven contracts should be handled by a judge. Euro International Underwriting ("EIU"), which wrote the policies on Sphere Drake's behalf, was subject to a cap on the risks to which

it could expose Sphere Drake. According to Sphere Drake, EIU exceeded this limit when agreeing to reinsure All American's policies. If that is so true, and All American (or its agent) knew it, then EIU had neither actual nor apparent authority to bind Sphere Drake, which would not be obliged either to arbitrate or to indemnify. See *Sphere Drake Insurance Ltd. v. All American Insurance Co.*, 256 F.3d 587 (7th Cir. 2001).

While litigating with respect to one of the seven policies, Sphere Drake submitted the other six to arbitration at All American's insistence. The arbitration was conducted under the auspices of the Association Internationale de Droits des Assurances ("AIDA") and its U.S. affiliate, the AIDA Reinsurance and Insurance Arbitration Society ("ARIAS·U.S."), which uses tripartite panels. Each insurer names one member of the panel, and these two choose a neutral (called the "umpire") to break ties. All American designated Robert M. Mangino, and Sphere Drake named Ronald A. Jacks. They chose Robert M. Huggins as the umpire. All three have considerable experience in international reinsurance arbitration, having served on at least 35 panels. Mangino and Jacks are founding directors of ARIAS·U.S.; Jacks is a former president of the U.S. chapter of AIDA. All three have served as umpires; Jacks has been chosen for that duty more than 25 times by party-named arbitrators who relied on his reputation for legal acumen and impartiality. Huggins decided that Sphere Drake was entitled to victory on the ground that All American had disavowed Stirling Cooke Brown Reinsurance Brokers as its agent (a tactic apparently designed to avoid any risk that Stirling Cooke, which placed the reinsurance through EIU, would be found to know about EIU's limited authority). But Huggins concluded that if All American was not bound (because Stirling Cooke lacked authority to act on its behalf) then Sphere Drake could not be bound either. Jacks joined him to make a

majority; Mangino dissented. Having demanded arbitration, All American decided that it did not like the result and asked a court to set aside the award—which it did, on the ground that Jacks displayed "evident partiality," one of the few grounds for refusing to enforce an award. 9 U.S.C. §10(a)(2). See 2002 U.S. Dist. LEXIS 8876 (N.D. Ill. May 17, 2002).

As far as we can see, this is the first time since the Federal Arbitration Act was enacted in 1925 that a federal court has set aside an award because a party-appointed arbitrator on a tripartite panel, as opposed to a neutral, displayed "evident partiality." The lack of precedent is unsurprising, because in the main party-appointed arbitrators are *supposed* to be advocates. In labor arbitration a union may name as its arbitrator the business manager of the local union, and the employer its vice-president for labor relations. Yet no one believes that the predictable loyalty of these designees spoils the award. See *Astoria Medical Group v. Health Insurance Plan of Greater New York*, 227 N.Y.S.2d 401, 182 N.E.2d 85 (1962). Cf. *United Transportation Union v. Gateway Western Ry.*, 284 F.3d 710 (7th Cir. 2002) (discussing the difference between party-appointed and neutral arbitrators). This is so because the parties are entitled to waive the protection of §10(a)(2), as they can waive almost any other statutory entitlement. See *Evans v. Jeff D.*, 475 U.S. 717 (1986); *United States v. Krilich*, 159 F.3d 1020 (7th Cir. 1998) (collecting authority). The Federal Arbitration Act makes arbitration agreements enforceable to the same extent as other contracts, so courts must "enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Information Sciences, Inc. v. Stanford University*, 489 U.S. 468, 478 (1989).

Parties are free to choose for themselves to what lengths they will go in quest of impartiality. Section 10(a)(2) just

states the presumptive rule, subject to variation by mutual consent. Industry arbitration, the modern law merchant, often uses panels composed of industry insiders, the better to understand the trade's norms of doing business and the consequences of proposed lines of decision. See Lisa Bernstein, *Private Commercial Law in the Cotton Industry: Creating Cooperation Through Rules, Norms, and Institutions*, 99 Mich. L. Rev. 1724, 1728 (2001). The more experience the panel has, and the smaller the number of repeat players, the more likely it is that the panel will contain some actual or potential friends, counselors, or business rivals of the parties. Yet all participants may think the expertise-impartiality tradeoff worthwhile; the Arbitration Act does not fasten on every industry the model of the disinterested generalist judge. See *Merit Insurance Co. v. Leatherby Insurance Co.*, 714 F.2d 673, 679 (7th Cir. 1983); *Nagel v. ADM Investor Services, Inc.*, 65 F. Supp. 2d 740, 744-45 (N.D. Ill. 1999), affirmed, 217 F.3d 436 (7th Cir. 2000). To the extent that an agreement entitles parties to select interested (even beholden) arbitrators, §10(a)(2) has no role to play.

There remains the question whether this was such an agreement, to which the answer is yes and no. Party-appointed arbitrators are entitled under the ARIAS•U.S. rules to engage in *ex parte* discussions with their principals until the case is taken under advisement, but they are supposed thereafter to be impartial adjudicators. The parties assume that as a result Sphere Drake could not have appointed one of its current employees as its arbitrator. (Whether that assumption is correct depends on ARIAS•U.S. rules and practices; we need not pursue the issue.) Still, Jacks was not, and never has been, one of Sphere Drake's employees. He is a retired lawyer, until recently a partner of Mayer, Brown & Platt (now Mayer, Brown, Rowe & Maw). The district court deemed Jacks "evidently partial" because four years before the arbitra-

tion, while still at Mayer Brown, Jacks had been engaged by the Bermuda subsidiary of Sphere Drake (a United Kingdom company) as counsel on an unrelated matter that landed in arbitration but was settled before decision. It emerged in discovery compelled by the district court that Jacks had billed about 380 hours for that matter. The judge deemed Sphere Drake (U.K.) his real client because its financial interests were at stake, even though the Bermuda subsidiary signed the engagement letter and paid the fees, and even though Jacks himself thought that most of his billable time related to corporate counseling rather than to the arbitration.

Let us suppose that the district judge's inferences are sound—that Jacks spent two months of equivalent full-time service as counsel for Sphere Drake in an international insurance arbitration, four years before the unrelated arbitration with All American. Even if Jacks had been the umpire, this would not have implied "evident partiality." Indeed, Jacks could have served as a federal judge in this case without challenge on grounds of partiality, and the scope of disqualification under §10(a)(2) is considerably more confined than the rule applicable to judges. See *Health Services Management Corp. v. Hughes*, 975 F.2d 1253 (7th Cir. 1992); *Delta Mine Holding Co. v. AFC Coal Properties, Inc.*, 280 F.3d 815 (8th Cir. 2001); *International Produce Co. v. A/S Rosshavet*, 638 F.2d 548 (2d Cir. 1981). "Evident partiality" under §10(a)(2) is a subset of the conditions that disqualify a federal judge under 28 U.S.C. §455(b). A judge can't hold even a single share of a party's stock, but this would not imply "evident partiality" for purposes of §10(a)(2). The parties themselves evinced this understanding. Before the arbitration began, umpire Huggins revealed that he was an investor in American International Group, which recently had made a bid to acquire All American—yet neither side thought that this imperiled Huggins' ability to serve as the neutral.

A federal judge would be disqualified on account of prior legal work "[w]here in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it". 28 U.S.C. §455(b)(2). Jacks fits none of these categories. The work he did for Sphere Drake was unrelated to the controversy with All American; no partner of Mayer Brown served "during such association" (that is, while Jacks also was a partner) as a lawyer in this dispute between Sphere Drake and All American (indeed, Sphere Drake has been represented throughout by a firm other than Mayer Brown); and neither Jacks nor any lawyer at Mayer Brown is a "material witness" in this case. Arbitration differs from adjudication, among many other ways, because the "appearance of partiality" ground of disqualification for judges does not apply to arbitrators; only *evident* partiality, not appearances or risks, spoils an award. Still, a judge's former representation of a litigant does not imply any need to disqualify under §455(a) because "his impartiality might reasonably be questioned." See *National Auto Brokers Corp. v. General Motors Corp.*, 572 F.2d 953 (2d Cir. 1978); cf. *Chitimacha Tribe v. Harry L. Laws Co.*, 690 F.2d 1157 (5th Cir. 1982). Nothing in the Code of Conduct for federal judges makes prior representation of a litigant a disqualifying event. The norm among new appointees to the bench is that once two years pass, perhaps even earlier, a judge is free to sit in controversies involving former clients. See Committee on Codes of Conduct, *Judicial Ethics Compendium* §3.6-5.

If Jacks could have served as a federal judge in this case, it is impossible to see how his background could demonstrate "evident partiality" within the meaning of §10(a)(2). See, e.g., *Gianelli Money Purchase Plan & Trust v. ADM Investor Services, Inc.*, 146 F.3d 1309 (11th Cir.

1998) (past business dealings between arbitrator and party do not demonstrate evident partiality). "Evident partiality" for a party-appointed arbitrator must be limited to conduct in transgression of contractual limitations. No claim is made, however, that Jacks' past violated the contractual restrictions for ARIAS•U.S. arbitration. Nonetheless, All American insists that all of this is irrelevant. The problem as All American sees it is not that Jacks was partial, but that he did not disclose before the arbitration the extent of his involvement in the unrelated proceedings four years earlier. All American attributes this rule to *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145 (1968).

At the arbitrators' initial meeting, where Huggins disclosed that he had a potential financial interest in All American, Jacks said only that he had "known of Sphere Drake over the years". Before the arbitration got under way, Jacks sent a letter stating that he had neglected a more concrete connection. He wrote:

> Several years ago I provided limited corporate advice to Jonathan Crawley, then President of Sphere Drake's Bermuda subsidiary. In that capacity I recommended that my former law firm, Mayer, Brown, & Platt, be retained to represent Sphere Drake (Bermuda) Ltd. in an arbitration . . . involving a set of wholly unrelated issues which were settled shortly after the initial meeting of the Panel and Counsel.

The district judge faulted this on several counts. First, the word "former" could be read to mean that Mayer Brown was Jacks' "former" firm at the time he made the recommendation, rather than (as was correct) at the time he wrote the letter. Second, Jacks did not reveal that when the firm took him up on the recommendation, he personally rendered legal services in the arbitration. Third, the

letter did not reveal that Sphere Drake (U.K.), the parent corporation, was the real party in interest in the arbitration. Finally, the letter did not reveal the number of hours Jacks devoted to the case and left the impression that his involvement had been negligible.

Once again, let us suppose that the letter was deficient in all of these respects. How do these shortcomings demonstrate "evident partiality" when, as we have observed already, the full truth would not have disclosed even a risk of partiality? The district court treated candid and complete disclosure as a requirement in addition to disinterest. Yet that position has no purchase in the language of §10(a)(2)—or for that matter in judicial practice. A federal judge is not required to disclose his role as counsel to one litigant in an unrelated matter many years ago. Since disclosure, though often prudent, is not thought *essential* to impartial judicial service, it is hard to see how a disclosure requirement could be deemed implicit in §10(a)(2), which, to repeat, addresses only a subset of the circumstances that would disqualify a judge.

*Commonwealth Coatings* observes that disclosure at the outset often avoids later controversies—as Huggins's disclosure did. One can only imagine what Sphere Drake would be saying now had Huggins kept his mouth shut and then supported All American's position. Disclosure in *Commonwealth Coatings* itself would have averted a problem that spoiled an award. The neutral in a tripartite arbitration was engaged in *ongoing* business relations with one of the parties, "and the relationship even went so far as to include the rendering of services on the very projects involved in this lawsuit." 393 U.S. at 146. The Court held that being on one side's payroll is a form of partiality condemned by §10(a)(2), by analogy to *Tumey v. Ohio*, 273 U.S. 510 (1927). The Justices urged arbitrators to disclose their business dealings so that similar problems would not recur.

*Commonwealth Coatings* did not hold, as All American would have it, that disclosure is compulsory for its own sake, and its absence fatal even if the arbitrator meets judicial standards of impartiality. See *United States Wrestling Federation v. Wrestling Division of AAU, Inc.*, 605 F.2d 313 (7th Cir. 1979) (holding an award valid even though the neutral failed to disclose that his law firm had represented one of the parties on a regular basis); *Merit*, *supra* (failure to disclose business relation many years before the arbitration does not compel vacatur of award). Nor did *Commonwealth Coatings* so much as hint that party-appointed arbitrators are governed by the norms under which neutrals operate. The point of *Commonwealth Coatings* is that the sort of financial entanglements that would disqualify a judge will cause problems for a neutral under §10(a)(2) unless disclosure is made and the parties' consent obtained.

Disclosure by a neutral may serve purposes other than flagging potential conflicts. One gets to *be* a neutral only by agreement of the party-appointed arbitrators. A potential neutral may have contractual obligations to reveal information to those who select him. Failure to comply with a contractual requirement designed to facilitate the search for an acceptable neutral might imply that the neutral exceeded his authority, spoiling the award under 9 U.S.C. §10(a)(4). But Mangino had no power to remove Jacks, and we have not been given any reason to think that umpire Huggins wanted more information from Jacks in order to know what to make of Jacks' arguments during the panel's deliberations. For someone in Jacks' position—a party-appointed arbitrator, and one who could have presided in court under the standards of §455—failure to make a full disclosure may sully his reputation for candor but does not demonstrate "evident partiality" and thus does not spoil the award.

REVERSED

A true Copy:

     Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*