**U.S. CARE, INC., a California corporation, Plaintiff,**

v.

**PIONEER LIFE INSURANCE CO. OF ILLINOIS, an Illinois corporation; Conseco Services, L.L.C., an Indiana Corporation, Defendants.**

**No. CV–02–5566 NM.**

United States District Court, C.D. California.

Nov. 22, 2002.

David W Affeld, David W Affeld Law Offices, Los Angeles, CA, for U.S. Care Inc, a California corporation, plaintiff.

Richard P Tricker, Thomas J Kearney, Richard P Tricker Law Offices, Los Angeles, CA, for Pioneer Life Insurance Company of Illinois, an Illinois corporation, Conseco Services LLC, an Indiana corporation, defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

MANELLA, District Judge.

### I. INTRODUCTION

The instant action arises out of a previous action, *U.S. Care, Inc. v. Pioneer Life Ins., et al.,* C.D. Cal. Case No. CV 99–5480 NM (Ex), currently pending before the Ninth Circuit ("the Underlying Action").

The Underlying Action arose out of a series of individual long term care insurance policies underwritten by Defendant Pioneer Life Insurance Co. ("Pioneer"), pursuant to a Management Agreement for Long Term Care Insurance ("the Management Agreement") with Plaintiff U.S. Care ("Plaintiff"). On May 18, 1999, Plaintiff filed the Underlying Action in state court, naming Pioneer and Conseco Services, L.L.C. ("Conseco") as defendants. Pioneer subsequently removed the Underlying Action to federal court. Pursuant to the terms of the Management Agreement, Judge Carlos Moreno stayed the Underlying Action pending mediation and binding arbitration. Judge Moreno subsequently confirmed the arbitration award, and Plaintiff appealed. During the pendency of the appeal, Plaintiff alleges it discovered evidence that requires the vacatur of the arbitration award.

Initially, Plaintiff filed an *ex parte* application seeking a *Crateo* indication that the court would entertain a Fed.R.Civ.P. 60(b) motion to examine the impact of the allegedly "newly discovered evidence" on the validity of the arbitration award if the Court of Appeals were to remand the case. The court denied Plaintiff's request. Plaintiff then filed the instant action, seeking to set aside the judgment confirming the arbitration award against it, despite the pending appeal. Plaintiff's specific grounds for the Independent Action are (1) fraud upon the court, (2) extrinsic fraud, and (3) newly discovered evidence. Currently before the court is Defendants' motion to dismiss the instant action pursuant to Fed.R.Civ.P. 12(b)(6). In the alternative, Defendants seek to stay the instant action pending mediation and arbitration pursuant to the Management Agreement.

## II. FACTUAL BACKGROUND [1]

On May 18, 1999, Plaintiff filed the Underlying Action in Los Angeles Superior Court, claiming breach of the Management Agreement entered into by Plaintiff and Pioneer on June 4, 1994.[2] Compl. ¶ 5. The Underlying Action's Complaint named Pioneer and Conseco as Defendants.[3] Pioneer removed the Underlying Action to federal court. Compl. ¶ 6. On June 23, 1999, Judge Carlos Moreno stayed the Underlying Action pending arbitration pursuant to the terms of the Management Agreement. *Id.*

Article XIII of the Management Agreement between Plaintiff and Pioneer governs mediation and arbitration. Compl. ¶ 8. It provides that any arbitration will be presided over by a "tripartite panel," consisting of an arbitrator chosen by each party, and a third selected by the two party-designated arbitrators. *Id.; see also Sphere Drake Ins. Ltd. v. All American Life Ins.*, 307 F.3d 617 (7th Cir.2002). Article XIII requires that all arbitrators be active or retired officers of insurance or reinsurance companies, Lloyd's of London underwriters, or claims handling or administrative firms, and be "disinterested in the outcome of the arbitration." *Id.*

Plaintiff selected Douglas Sizemore as its party-designated arbitrator. Compl. ¶ 10. Plaintiff represented to Pioneer that Sizemore had not done business with U.S.

---

1. The following facts are assumed to be true for purposes of this motion only.

2. The parties to the Management Agreement are Plaintiff and Defendant Pioneer. *See* Compl. ¶ 5. Defendant Conseco is not a party to the Management Agreement.

3. Both Defendant Conseco and Defendant Pioneer are subsidiaries of Conseco, Inc.

Compl. ¶ 4. Plaintiff asserts that during the times relevant to the matters alleged in the Complaint, Defendant Conseco was affiliated with Defendant Pioneer, and had "operational oversight" for many Conseco, Inc. insurance companies, including both Pioneer and Bankers Life. *See id.*

Care, and that he met the requirements of Article XIII. *Id.* Pioneer notified Plaintiff that it had selected Rodney D. Moore as its party-designated arbitrator. Compl. ¶ 11. Pioneer subsequently provided Plaintiff with a copy of Moore's resume, which reflected extensive experience as an arbitrator. Compl. ¶ 12. The resume disclosed that Moore had done work for Conseco, Inc. five years earlier. Plaintiff did not object to Moore's appointment. Compl. ¶ 15. Sizemore and Moore subsequently selected Pat Tedrow as the third arbitrator. Compl. ¶ 16.

Plaintiff claims that Pioneer and Moore did not disclose that Moore purportedly had an ongoing business relationship with Bankers Life Insurance Company ("Bankers Life"), a wholly owned subsidiary of Conseco, Inc., and a sister company of Conseco and Pioneer. Compl. ¶ 17.[4] Specifically, Plaintiff asserts that Moore was the President, Secretary, and sole paid employee of Bankers Multiple Life Insurance Company ("Bankers Multiple"). *Id.* Bankers Multiple has a reinsurance agreement with Bankers Life, entered into in 1961 and most recently amended in 1994. Neither Bankers Life nor Bankers Multiple is a party to the Management Agreement or to this litigation. Plaintiff does not allege that Bankers Multiple has any ongoing direct relationship with any party to the arbitration or to this litigation. Plaintiff contends, however, that Moore and Defendants unlawfully failed to disclose the reinsurance agreement. *See* Compl. ¶ 21.

On August 15, 2000 and June 14, 2001, arbitration awards were rendered, finding that neither Plaintiff nor Pioneer was in breach of the Management Agreement. On October 9, 2001, Judge Moreno denied Plaintiff's motion to vacate the finding of the majority of the arbitration panel, and confirmed the arbitration awards. Compl. ¶ 8.[5] In the order confirming the arbitration awards, Judge Moreno noted that "[Plaintiff's] motion is another attempt by [Plaintiff] to encourage this court to review the merits of the Arbitration Panel's decision." *See* Defs. Request for Judicial Notice, Ex. C at 7. On November 8, 2001, Plaintiff filed a notice of appeal, which is currently pending before the Ninth Circuit.

Plaintiff asserts that in late May or early June 2002, it first "became aware of the possibility" of Moore's alleged relationship with the "Conseco, Inc. family of companies," and ordered a copy of Bankers Multiple's annual statement from the Illinois Department of Insurance. Compl. ¶ 31. The only mention of such a relationship in the 132–page 1999 Annual Statement was a single line reference to a reinsurance agreement between Bankers Multiple and Bankers Life. *Id.* On June 20, 2002, Plaintiff received a copy of Bankers Multiple's supplemental compensation form for 2001. Compl. ¶ 30. The form stated that Moore received $125,000 compensation from Bankers Multiple. Compl. ¶ 32. After acquiring this information, Plaintiff sought to challenge the validity of the arbitration awards. On June 25, 2002, Plaintiff filed an *ex parte* request for a *Crateo* indication in the Underlying Action.[6] The court denied Plaintiff's request. On July 17, 2002, Plaintiff

---

**4.** As noted above, Conseco, Inc. is not a party to this litigation, and its subsidiary, Conseco, is not a party to the Management Agreement which was the subject of the arbitration.

**5.** The majority of the arbitration panel consisted of Moore and Tedrow. *See* Defs. Request for Judicial Notice, Ex. B.

**6.** In the Ninth Circuit, a party seeking to bring a Rule 60(b) motion while a case is pending appeal must comply with the requirements set forth in *Crateo Inc. v. Intermark, Inc.,* 536 F.2d 862 (9th Cir.1976). Under *Crateo,* a party must file a request with the district court seeking an indication whether the court would entertain such a motion. *See*

filed the instant action to set aside the judgment of the Underlying Action.

## III. DISCUSSION

### A. Legal Standard

A motion under Fed.R.Civ.P. 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. A Rule 12(b)(6) dismissal is proper only where there is either a "lack of cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988). The court must deny the motion unless it appears that plaintiff can prove no set of facts that would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *SEC v. Cross Financial Services, Inc.*, 908 F.Supp. 718, 726–27 (C.D.Cal. 1995). When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *See Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir.1994). However, the court is not bound to assume the truth of legal conclusions merely because they are stated in the form of factual allegations. *See Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1980). Dismissal is proper if a complaint is vague, conclusory, and fails to set forth any material facts in support of the allegation. *See North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 583 (9th Cir.1983). Plaintiff bears the burden of pleading sufficient facts to state a claim; courts will not supply essential elements of a claim that were not initially pled. *See Richards v. Harper*, 864 F.2d 85, 88 (9th Cir.1988).

If the court chooses to dismiss the complaint, it must then decide whether to grant leave to amend. In general, leave to amend is denied only if it is clear that amendment would be futile, and "that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir.1987) (*quoting Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir.1980) (per curiam)); *see Poling v. Morgan*, 829 F.2d 882, 886 (9th Cir.1987) (*citing Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)) (futility is basis for denying amendment under Rule 15). However, "[t]he liberal rules of pleading in the federal system are not without limits." *Levitch v. Columbia Broadcasting Sys., Inc.*, 94 F.R.D. 292, 295 (S.D.N.Y.1982).

### B. Application

 Rule 60(b) permits a district court to set aside a judgment on various grounds, including fraud upon the court, extrinsic fraud, and newly discovered evidence. *See* Fed.R.Civ.P. 60(b). Relief from judgment pursuant to Rule 60(b) should be confined to situations in need of an "extraordinary remedy," for "[t]he framers of Rule 60(b) set a higher value on the social interest in the finality of litigation." *Merit Insurance Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 683 (7th Cir.1983) (Posner, J.). Rule 60(b) is "an appropriate vehicle by which to challenge a judgment confirming an arbitration award[.]" *Baltia Air Lines, Inc. v. Transaction Management, Inc.*, 98 F.3d 640, 642 (D.C.Cir.1996).

 Although Rule 60(b) is typically applied through a noticed motion in the underlying action, a party may bring an independent action in equity to set aside a judgment. *See United States v. Beggerly*, 524 U.S. 38, 45, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998); *see also Nevada VTN*

---

*id.* at 869. If the party receives such an indication, it may then apply to the Ninth Circuit to remand the case for purposes of the Rule 60(b) motion. *Id.* A court's decision to deny a request for a *Crateo* indication is only a procedural ruling, "not a final determination of the merits of the Rule 60(b) motion." *Id.*

*v. General Ins. Co. of America,* 834 F.2d 770, 775 (9th Cir.1987) ("Motions and independent actions for relief commonly have been treated as interchangeable."). As with Rule 60(b) motions, relief from judgment pursuant to an independent action must be granted only in instances of grave injustice. *See Beggerly,* 524 U.S. at 46, 118 S.Ct. 1862 (internal quotations omitted) ("Independent actions must, if Rule 60(b) is to be interpreted as a coherent whole, be reserved for those cases of injustices which, in certain instances, are deemed sufficiently gross to demand a departure from rigid adherence to the doctrine of res judicata.") *Id.* at 46, 118 S.Ct. 1862.

█ To successfully plead an independent action, a plaintiff's allegations must satisfy the general requirements of a suit in equity. *See Treadaway v. Academy of Motion Picture Arts & Sciences,* 783 F.2d 1418, 1420 (9th Cir.1986) ("[The court's] power [to entertain an independent action] is one that is rooted in tradition and governed by general equitable principles."). Thus, to successfully maintain an independent action, a plaintiff must establish the prerequisites for a suit in equity, namely that (1) the plaintiff has a meritorious claim or defense; (2) the plaintiff is diligent and not at fault; (3) there is a lack of alternative remedy, and (4) the judgment is "manifestly unconscionable." *See* 12 James Wm. Moore et al., Moore's Federal Practice § 60.82 (3d Ed.2002).

█ To state a meritorious claim, a plaintiff must make allegations that, if established at trial, would constitute a valid claim. *See* 12 Moore's Federal Practice § 60.24[2]. In the instant action, Plaintiff's claim is one of "nondisclosure," specifically that Defendants and Moore failed to disclose the existence of the reinsurance agreement between Bankers Multiple and Bankers Life. *See* Compl. ¶¶ 24–25. Plaintiff asserts that this relationship consti-

tutes evident partiality, and that Defendants' and Moore's failure to disclose its existence requires the vacatur of the arbitration award pursuant to 9 U.S.C. § 10(a)(2). *See* Opp. at 16. Plaintiff does not allege that Moore was actually biased against Plaintiff during the arbitration. *See Schmitz v. Zilveti,* 20 F.3d 1043, 1047 (9th Cir.1994) (explaining difference between "nondisclosure" and "actual bias" challenges to arbitration awards).

█ Article XIII of the Management Agreement requires all arbitrators to be only "disinterested in the outcome of the arbitration," not absolutely neutral as Plaintiff implies. A court cannot require a higher level of impartiality than is provided for by the parties in an arbitration agreement. *See Merit Insurance,* 714 F.2d at 679 (quoting *American Almond Products Co. v. Consolidated Pecan Sales Co.,* 144 F.2d 448, 451 (2d Cir.1944)) ("The parties to an arbitration choose their method of dispute resolution, and can ask no more impartiality than inheres in the method they have chosen."). For Plaintiff's claim to be meritorious, the alleged connection between Moore and Defendants must be strong enough to undermine Defendants' claim that Moore was "disinterested" in the outcome of the arbitration. It is undisputed that the only connection at issue is the existence of the reinsurance contract between Bankers Multiple, of which Moore is an officer, and Bankers Life, a subsidiary of Conseco, Inc. Plaintiff argues that this connection is sufficient to create evident partiality warranting the vacatur of the arbitration award. The court disagrees.

Plaintiff's argument relies primarily on *Commonwealth Coatings Corp. v. Continental Casualty,* 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968), and the Ninth Circuit's interpretation of this case in *Schmitz v. Zilveti,* 20 F.3d 1043 (9th Cir. 1994). In *Commonwealth Coatings,* a neu-

tral arbitrator did not disclose that he had engaged in periodic and significant business relationships with one of the parties in the five or six years before the arbitration. The Supreme Court held the neutral arbitrator's failure to disclose this information justified vacating the arbitration award, even in the absence of allegations of fraud or bias. However, the Court held that an arbitrator is not required to disclose every business connection, noting that "an arbitrator's business relationships may be diverse indeed, involving more or less remote commercial connections with great numbers of people. He cannot be expected to provide the parties with his complete and unexpurgated business biography." *Id.* at 151–52, 89 S.Ct. 337. Instead, an arbitrator must disclose only those relationships that are substantial, and not "trivial." *Id.; see also Merit Insurance*, 714 F.2d at 678–79.

In *Schmitz v. Zilveti*, 20 F.3d 1043 (9th Cir.1994), the parties submitted a dispute to arbitration before the National Association of Securities Dealers, to be performed in accordance with the NASD's arbitration procedures. One of the arbitrators did not disclose that his law firm had represented the parent company of one of the parties in at least 19 cases, the most recent of which occurred 21 months prior to the arbitration. The losing party challenged the arbitration award, arguing that it should be vacated because the arbitrator was "evidently partial" under 9 U.S.C. § 10(a)(2). *Id.* at 1044.[7] The Ninth Circuit agreed, holding that " 'evident partiality' is present when the undisclosed facts show a 'reasonable impression of partiality.' " *Id.* at 1046. The Circuit further held that "an arbitrator may have a duty to investigate

[for potential conflicts] independent of its *Commonwealth Coatings* duty to disclose." *Id.* at 1048. Such an independent duty can be created by a statute or arbitration agreement. In *Schmitz*, the NASD Code created such an independent duty, and the arbitrator's failure to discover and disclose the conflict "resulted in a reasonable impression of partiality under *Commonwealth Coatings.*" *Id.* at 1049.

The alleged relationship between Moore and Defendants is simply too tenuous to support the "reasonable impression of partiality" warranting vacatur of an arbitration award under either *Commonwealth Coatings* or *Schmitz*. Plaintiff does not allege that Moore has a relationship with any party to the arbitration. Instead, Plaintiff relies solely on the existence of a 41–year old reinsurance contract between Bankers Life, a sister corporation to the Defendants in the instant action, and Bankers Multiple, a company that Moore has been affiliated with since 1996. The most recent renewal of the reinsurance agreement occurred in 1994—two years prior to Moore's involvement with Bankers Multiple—and Plaintiff does not allege that Moore had any involvement in the execution of the reinsurance agreement. Plaintiff's claim that Defendants used a company doing business with a sister company as a "conduit for money" to Moore is devoid of factual support. Moore's affiliation with a company doing business with a sister company to a party to the arbitration does not establish—or create an inference—that Moore was "clearly not disinterested." Compl. ¶ 36. Nor does Plaintiff's conclusory assertion create a "reasonable impression of partiality."[8] Plaintiff cites no authority—and this court

---

7. Section 10(a)(2) allows a district court to vacate an arbitration award upon application of any party to the arbitration "[w]here there was evident partiality ... in the arbitrators[.]" 9 U.S.C. § 10(a)(2).

8. Plaintiff's theory as articulated in the Complaint is also undermined by Moore's disclosure that he had done work for Conseco, Inc. five years prior to the arbitration. If such a connection did not cause Plaintiff to believe

has found none—supporting the vacatur of an arbitration award due to such a remote connection between an arbitrator and a party to the arbitration.[9]

Furthermore, the instant action concerns the scope of the duty to disclose of a party-appointed arbitrator, not a neutral arbitrator. Although the Ninth Circuit has not squarely ruled on the issue, other circuits have recognized a difference between the standard applied to party-appointed arbitrators and neutral arbitrators. *See, e.g., Sphere Drake Ins. Ltd. v. All American Life Ins.,* 307 F.3d 617 (7th Cir.2002) (Easterbrook, J.); *Delta Mine Holding Co. v. AFC Coal Props., Inc.,* 280 F.3d 815 (8th Cir.2001). In *Sphere Drake,* the Seventh Circuit held that the discovery of a connection between a party-appointed arbitrator and a party's subsidiary cannot alone be grounds for setting aside an arbitration award on the basis of "evident partiality." In doing so, the court reversed the district court's finding that a party-appointed arbitrator displayed evident partiality, as defined by § 10(a)(2), because he had provided legal services to a subsidiary of a party to the arbitration on an unrelated matter. *See Sphere Drake,* 307 F.3d at 620–21.[10] In reaching its decision, the court expressly rejected the contention that *Commonwealth Coatings* governed such a situation, as it did not "so much as hint" that party-appointed arbitrators are governed by the same restrictions placed upon neutrals. *See also Delta Mine,* 280 F.3d at 821–22 (In cases challenging the partiality of party-appointed arbitrators,

"the [arbitration] award should be confirmed unless the objecting party proves the party arbitrator's partiality affected the award," whereas in cases challenging the partiality of neutral arbitrators, no such showing is necessary.).

 Some connection between parties and arbitrators is not unexpected, particularly when an arbitration agreement, such as the one at issue in the instant action, requires that the arbitrators be experienced in the relevant industry. "[An arbitration] panel will contain some actual or potential friends, counselors, or business rivals of the parties," because "[i]ndustry arbitration ... often uses panels composed of industry insiders, [who are] better [able] to understand the trade's norms of doing business and the consequences of proposed lines of decision." *Sphere Drake,* 307 F.3d at 620. Thus, as Judge Posner explained in *Merit Insurance,* a court should grant relief sparingly in challenges based on distant relationships between a party and an arbitrator, as courts "do not want to encourage the losing party to every arbitration to conduct a background investigation of each of the arbitrators in an effort to uncover evidence of a former relationship with the adversary." *Merit Insurance,* 714 F.2d at 683. Indeed, the instant action exemplifies the situation Judge Posner warned against, as it is "another attempt by [Plaintiff] to encourage [the] court to review the merits of the Arbitration Panel's decision." *See* Judge Moreno's Order, dated 10/4/01, Defs. Request for Judicial

that Moore would be disinterested, a challenge based on a more remote relationship is less compelling. *See Sphere Drake Ins.,* 307 F.3d at 621 (post-arbitration claim of evident partiality undermined by party's prior knowledge of stronger connection between opposing party and another arbitrator).

9. As the court finds that the non-disclosed information is insufficient to establish "evident partiality," it need not address whether

Moore had a duty to investigate under *Schmitz.*

10. The Circuit noted that the district court's opinion, "[a]s far as we can see, [is] the first time since the Federal Arbitration Act was enacted in 1925 that a federal court has set aside an award because a party-appointed arbitrator on a tripartite panel, as opposed to a neutral, displayed 'evident partiality.'" *Id.* at 620.

Notice, Ex. C at 7. As Plaintiff has failed to plead a meritorious claim necessary to maintain an independent action, the court GRANTS Defendants' motion to dismiss.[11]

### C. Leave to Amend

. ■ Plaintiff has requested that if the court grants Defendants' motion, the court allow Plaintiff to amend the Complaint. *See* Opp. at 23. Plaintiff has not suggested that it can allege additional facts which support its claim for relief. "[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." *Confederate Mem. Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C.Cir.1993). Accordingly, the court DENIES Plaintiff's request to amend the Complaint.

### IV. CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' motion to dismiss *with prejudice.*

See also 2002 WL 31995311.

---

**11.** As the court finds Plaintiff has failed to plead a meritorious claim, it need not address whether Plaintiff meets the other required elements of an independent action. For the same reasons, Defendants' request to stay the instant action pending arbitration is moot.