17-1137-cv
*Certain Underwriting Members of Lloyds of London v. Insurance Company of the Americas*

# United States Court of Appeals for the Second Circuit

AUGUST TERM 2017
No. 17-1137-cv

CERTAIN UNDERWRITING MEMBERS OF LLOYDS OF LONDON, CERTAIN UNDERWRITING MEMBERS OF LLOYDS, LONDON SUBSCRIBING TO TREATY NO. 0272/04,

*Petitioners-Appellees,*

*v.*

STATE OF FLORIDA, DEPARTMENT OF FINANCIAL SERVICES, AS RECEIVER FOR INSURANCE COMPANY OF THE AMERICAS,*

*Respondent-Appellant.*

ARGUED: JANUARY 8, 2018
DECIDED: JUNE 7, 2018

Before:     JACOBS, RAGGI, and HALL, *Circuit Judges*:

Insurance Company of the Americas ("ICA") appeals the order vacating the arbitral award (the "Award") issued in a reinsurance dispute between ICA and Certain Underwriting Members of Lloyds of London including those

---

* The Clerk of the Court is directed to amend the official caption to read as shown above.

members subscribing to Treaty No. 02072/04 (the "Underwriters"). The issue on appeal is whether the Award is void for evident partiality under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10(a)(2), by reason of the failure by ICA's party-appointed arbitrator to disclose close relationships with former and current directors and employees of ICA. The district court concluded under our reasonable person standard that the ICA-appointed arbitrator was impermissibly partial to ICA. We hold that a party seeking to vacate an award under Section 10(a)(2) must sustain a higher burden to prove evident partiality on the part of an arbitrator who is appointed by a party and who is expected to espouse the view or perspective of the appointing party. See Scandinavian Reinsurance Co. Ltd. v. Saint Paul Fire and Marine Ins. Co., 668 F.3d 60, 76 n.21 (2d Cir. 2012).

The district court weighed the conduct of ICA's party-appointed arbitrator under the standard governing neutral arbitrators. We therefore vacate and remand for the district court to reconsider under the proper standard. An undisclosed relationship between a party and its party-appointed arbitrator constitutes evident partiality, such that vacatur of the award is appropriate if: (1) the relationship violates the contractual requirement of disinterestedness (see Sphere Drake Ins. v. All American Life Ins., 307 F.3d 617, 620 (7th Cir. 2002)); or (2) it prejudicially affects the award (see Delta Mine Holding Co. v. AFC Coal Properties, Inc., 280 F.3d 815, 821-22 (8th Cir. 2001)).

PHILIP J. LOREE JR., Loree & Loree, New York, New York, *for Respondent-Appellant.*

TIMOTHY W. STALKER, Weber Gallagher Simpson Stapleton Fires & Newby, LLP, Philadelphia, PA, *for Petitioners-Appellees Certain Underwriting Members Lloyds of London.*

JOSHUA P. BROUDY, Rosenthal Lurie & Broudie LLC, Philadelphia, PA, *for Petitioners-Appellees Certain Underwriting*

DENNIS JACOBS, *Circuit Judge*:

Insurance Company of the Americas ("ICA")[1] appeals the order vacating the arbitral award (the "Award") issued in a reinsurance dispute between ICA and Certain Underwriting Members of Lloyds of London including those members subscribing to Treaty No. 02072/04 (the "Underwriters"). The issue on appeal is whether the Award is void for evident partiality under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10(a)(2), by reason of the failure by ICA's party-appointed arbitrator to disclose close relationships with former and current directors and employees of ICA. The district court concluded under our reasonable person standard that the ICA-appointed arbitrator was impermissibly partial to ICA. We hold that a party seeking to vacate an award under Section 10(a)(2) must sustain a higher burden to prove evident partiality on the part of an arbitrator who is appointed by a party and who is expected to espouse the view or perspective of the appointing party. See Scandinavian Reinsurance Co. Ltd. v. Saint Paul Fire and Marine Ins. Co., 668 F.3d 60, 76 n.21 (2d Cir. 2012).

The district court weighed the conduct of ICA's party-appointed arbitrator under the standard governing neutral arbitrators. We therefore vacate and remand for the district court to reconsider under the proper standard. An undisclosed relationship between a party and its party-appointed arbitrator constitutes evident partiality, such that vacatur of the award is appropriate if: (1) the relationship violates the contractual requirement of disinterestedness (see Sphere Drake Ins. v. All American Life Ins., 307 F.3d 617, 620 (7th Cir. 2002)); or (2) it prejudicially affects the award (see Delta Mine Holding Co. v. AFC Coal Properties, Inc., 280 F.3d 815, 821-22 (8th Cir. 2001)).

---

[1]Following oral argument, on January 24, 2018, the Circuit Court of Florida, Leon County, declared ICA insolvent and placed the company in liquidation, appointing Florida's Department of Financial Services as receiver. We nonetheless continue to refer to appellant as ICA throughout this opinion.

BACKGROUND

ICA insures workers compensation claims in the construction industry. The Underwriters in turn provide ICA with second and third layer reinsurance under a series of treaties, each of which contains an arbitration clause requiring that disputes be adjudicated by an arbitration panel consisting of three members: one party-appointed arbitrator for each party, and the neutral umpire. The only contractual qualification is that the arbitrators "be active or retired disinterested executive officers of insurance or reinsurance companies or Lloyd's London Underwriters." J. App'x at 593. Each party bears the expense of its own arbitrator and is permitted to engage in *ex parte* discussion with its party-appointed arbitrators during discovery.

ICA requested coverage from the Underwriters under the treaties for claims arising out of multiple construction site injuries exceeding in total $12.5 million. The Underwriters declined the claim, citing language in the treaties that (according to the Underwriters) restricts coverage to a single "loss occurrence" involving more than one insured. Id. at 576-77. In December 2014, ICA demanded arbitration pursuant to the treaty. ICA appointed Alex Campos as its arbitrator, and the two party-appointed arbitrators selected Ben Hernandez as neutral umpire.

At the May 11, 2015 organizational meeting, each arbitrator was called upon to disclose pre-existing or concurrent relationships with a party. ICA was represented at the disclosure meeting by Gary Hirst, Chairman and Chief Investment Officer, and arbitration counsel. Campos disclaimed any appreciable link to ICA:

> I don't know anyone here except for Mr. [Gary Hirst, Chairman of ICA]. I had some potential business dealings with him about ten years ago that never really materialized. He had an associate that I was trying to do a deal with but it never went anywhere and other than that contact I don't have any other related contacts with Mr. Hirst.

Id. at 521. Between the organizational meeting and the conclusion of the

4

arbitration, Campos let pass several opportunities to come forward with additional disclosures.

As the district court found, Campos's pre-existing and concurrent relationships with ICA's representatives were considerably more extensive than Campos disclosed. The court emphasized undisclosed dealings between ICA and a human resources firm named Vensure Employee Services ("Vensure") of which Campos was President and CEO. Specifically, the court found that: ICA and Vensure operate out of the same suite in a business park in Mesa, Arizona; John Iorillo, a former director of ICA, was CFO of a firm that provided consulting services to Vensure; and Ricardo Rios, a Director of ICA, was hired as the CFO of Vensure in the summer of 2015. Rios testified as a witness at the arbitration, and Iorillo's name was mentioned repeatedly.

The panel favored ICA's interpretation of the treaty language, and the Award granted ICA net damages of over $1.5 million. The Underwriters moved to vacate the Award on several grounds, including "evident partiality" on the part of Alex Campos, manifest disregard of the law, and prejudicial procedural misconduct. ICA cross-moved to confirm.

The district court granted the motion to vacate the award and denied the cross-motion to confirm. Certain Underwriting Members v. Ins. Co. of Am., 16-CV-323(VSB), 2017 WL 5508781, at *11 (S.D.N.Y. Mar. 31, 2017). Campos's "undisclosed relationships" with ICA representatives were found to be "significant enough to demonstrate evident partiality." Id. at *11. The district court "note[d] that the relationships here are far more significant, more numerous, and involve more financial entanglements than are present in" other cases from this Circuit. Id. (citing the "number and variety" of relationships with former ICA employees, which were "longstanding" and "ongoing at the time of the arbitration"). Additionally, the court was "troubl[ed]" by the apparent willfulness of the non-disclosures, in particular Campos's silence during the testimony of Ricardo Rios. Id. The court did not take issue with the substance of the Award, did not connect Campos's conduct to the panel's decision, and made no finding that Campos had a personal or financial interest in the outcome of the arbitration.

# DISCUSSION

## I

"When reviewing a district court's decision to vacate an arbitration award, we review findings of fact for clear error and questions of law *de novo*." Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S., 492 F.3d 132, 136 (2d Cir. 2007). Our review of an arbitration award is "severely limited" in view of the strong deference courts afford to the arbitral process. ReliaStar Life Ins. Co. of N.Y. v. EMC Nat. Life Co., 564 F.3d 81, 85 (2d Cir. 2009) (quoting Amicizia Societa Navegatione v. Chilean Nitrate & Iodine Sales Corp., 274 F.2d 805, 808 (2d Cir. 1960)); see also Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC, 497 F.3d 133, 138 (2d Cir. 2007). A "stringent standard for vacating awards is a necessary corollary to the federal policy favoring arbitration." Barry R. Ostrager and Mary Kay Vyskocil, MODERN REINSURANCE LAW AND PRACTICE, p. 598 (2014 ed.).

"Under the FAA, the validity of an award is subject to attack only on those grounds listed in [Section] 10, and the policy of the FAA requires that the award be enforced unless one of those grounds is affirmatively shown to exist." Wall Street Assocs. L.P. v. Becker Paribas, Inc., 27 F.3d 845, 849 (2d Cir. 1994). We may vacate under Section 10 "where there was evident partiality ... in the arbitrator." Morelite Const. Corp. v. New York City Dist. Council Carpenters Ben. Funds, 748 F.2d 79, 82 (2d Cir. 1984) ("Morelite") (internal quotation marks omitted); see 9 U.S.C. § 10(a)(2). "[E]vident partiality within the meaning of 9 U.S.C. § 10 will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." Id. at 84. The party challenging the award must prove the existence of evident partiality by clear and convincing evidence. See Nat'l Football League Mgm't Council v. Nat'l Football League Players Ass'n, 820 F.3d 527, 548 (2d Cir. 2016); accord Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 671 (2010) (The party challenging an award on the basis of evident partiality "must clear a high hurdle.").

The Supreme Court established in Commonwealth Coatings that "an

6

arbitrator's failure to disclose a material relationship with one of the parties can constitute 'evident partiality' requiring vacatur of the award." Lucent Techs. Inc. v. Tatung Co., 379 F.3d 24, 28 (2d Cir. 2004) (citing Commonwealth Coatings Corp. v. Continental Cas. Co., 393 U.S. 145 (1968)). But "Commonwealth Coatings does not establish a *per se* rule requiring vacatur of an award whenever an undisclosed relationship is discovered." Id. at 30. It is "the materiality of the undisclosed conflict [that] drives a finding of evident partiality, not the failure to disclose or investigate *per se*."[2] National Indemnity Co. v. IRB Brasil Resseguros S.A., 164 F. Supp. 3d 457, 476, 478 (S.D.N.Y. 2016) (citing Scandinavian Reinsurance, 668 F.3d at 77 ("The nondisclosure does not by itself constitute evident partiality. The question is whether the facts that were not disclosed suggest a material conflict of interest.") (emphasis in original)); see also Applied Indus. Materials, 492 F.3d at 137.

A neutral arbitrator's relationship with a party is material if it goes "so far as to include the rendering of services on the very projects involved in th[e] lawsuit," Commonwealth Coatings, 393 U.S. at 146, or contemporaneous investments that create a vested financial stake in that party. See Applied

---

[2] We acknowledge the value of disclosure, transparency, and ethical conduct on the part of all arbitrators. See Ostrager, supra, at 535 (noting disclosure "enables the parties to identify potential problems at the outset and[] to avoid later claims of prejudice by losing parties"). Mainstream arbitral guidelines such as ARIAS and the American Arbitration Association require comprehensive disclosure. See id. at 535-36 (citing the Code of Ethics for Arbitrators in Commercial Disputes); ARIAS-U.S. Practical Guide to Reinsurance Arbitration Procedure, ¶ 3.6. It would appear that Alex Campos violated these ethical codes; and future parties may well be wary of his participation on panels. However, it is well-established that such ethical violations do not compel vacatur of an otherwise-valid arbitration award. See Ostrager, supra, at 536 (citing Merit Ins. Co. v. Leatherby Ins. Co., 714 F.2d 673, 680 (7th Cir. 1983)). An arbitrator's "failure to make a full disclosure may sully his reputation for candor but does not demonstrate evident partiality." Sphere Drake Ins. v. All American Life Ins., 307 F.3d 617, 622-23 (7th Cir. 2002).

Indus. Materials, 492 F.3d at 137-39.   A reasonable person could also conclude that the arbitrator is unduly partial to the side of a close family relation.   See Morelite, 748 F.2d at 84.

But even with respect to neutral arbitrators, "we have not been quick to set aside the results of an arbitration because of an arbitrator's alleged failure to disclose information."   Andros Compania Maritima, S.A. v. Marc Rich & Co., 579 F.2d 691, 700 (2d Cir. 1978).   "[W]e have declined to vacate awards because of undisclosed relationships where the complaining party should have known of the relationship, or could have learned of the relationship 'just as easily before or during the arbitration rather than after it lost its case.'"   Lucent Techs., 379 F.3d at 28 (internal quotation marks and citation omitted); see Cook Indus., Inc. v. Itoh & Co., 449 F.2d 106, 107-108 (2d Cir. 1971).   "We have concluded in various factual settings that the evident-partiality standard was not satisfied because the undisclosed relationship at issue was 'too insubstantial to warrant vacating the award.'"   Scandinavian Reinsurance, 668 F.3d at 72 (citing Lucent Techs., 379 F.3d at 30).

For example, past contacts do not amount to material bias.   When an arbitrator's "relationship with [a party] materially end[s] before [the party] appointed him as an arbitrator," one "cannot say that a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." Lucent Techs. 379 F.3d at 31; see also Merck & Co., Inc. v. Pericor Therapeutics, Inc., No. 16-CV-22 (RA), 2016 WL 4491441, at *11 (S.D.N.Y. Aug. 24, 2016) (concluding that disclosure of a joint venture between a party and the arbitrator's prior law firm was not compelled because the venture ended years before the arbitration).   Thus an arbitrator is not disqualified from selection as the neutral umpire by having received compensation from one of the parties for past service as a party-appointed arbitrator.   Nat'l Indemnity Co., 164 F. Supp. 3d at 480 (ruling that "payment as an arbitrator in a past matter is ... insufficient to produce a conflict in a later matter"); see also Scandinavian Reinsurance, 668 F.3d at 73-74 (undisclosed prior role as party-appointed arbitrator distinguishable from material relationships "such as a family connection or ongoing business arrangement with a party or its law firm—circumstances in which a reasonable person could reasonably infer a connection between the undisclosed outside

8

relationship and the possibility of bias for or against a particular arbitrating party.").

In broader strokes, the FAA does not proscribe all personal or business relationships between arbitrators and the parties.   See Lucent Techs., 379 F.3d at 30 (co-ownership of an airplane by arbitrator and party's representative did not indicate evident partiality); Andros, 579 F.2d at 701 (professional relationship between arbitrator and party's representative arising from prior arbitration service together did not indicate evident partiality); see, e.g., Merck & Co., 2016 WL 4491441, at *8 (The FAA "does not prohibit arbitrators from having any personal and professional relationships with individuals who work in the industries in which they have expertise.").   "[T]he balance of case law in the Second Circuit supports the proposition that when a purported financial interest or financial relationship between an arbitrator and a party to arbitration is indirect, general[,] or tangential, courts should not vacate arbitration awards." Merck & Co., 2016 WL 4491441, at *9 (internal citation and quotation marks omitted).

We therefore "requir[e] a showing of something more than the mere 'appearance of bias' to vacate an arbitration award," Morelite, 748 F.2d at 83, and will not vacate arbitration awards for evident partiality when the party opposing the award "identifies no direct connection between [the arbitrator] and the outcome of the arbitration." Merck & Co., 2016 WL 4491141 at *9; see also Scandinavian Reinsurance, 668 F.3d at 78 ("possibilities" that arbitrators could be influenced by each other's thinking on concurrent panels "do not establish bias").

Judicial tolerance of relationships between arbitrators and party representatives reflects competing goals in partiality decisions.   Complete candor and transparency help root out bias and fraud.   But reinsurers and ceding insurers affirmatively seek arbitral panels with expertise.   "[T]he best informed and most capable potential arbitrators" are repeat players with deep industry connections, Commonwealth Coatings, 393 U.S. at 150 (White, J., concurring), who will "understand the trade's norms of doing business and the consequences of proposed lines of decision," Sphere Drake Ins. v. All American Life Ins., 307 F.3d 617, 620 (7th Cir. 2002); accord Nat'l Indemnity Co., 164 F. Supp. 3d at 480

9

("[S]pecialized arbitrators are likely to know one another, and repeated or overlapping service by the same arbitrators in different arbitrations is bound to occur."). "Familiarity with a discipline often comes at the expense of complete impartiality," and "specific areas tend to breed tightly knit professional communities." Morelite, 748 F.2d at 83. "[T]o disqualify any arbitrator who had professional dealings with one of the parties (to say nothing of a social acquaintanceship) would make it impossible, in some circumstances, to find a qualified arbitrator at all." Id.; see also Nat'l Indemnity Co., 164 F. Supp. 3d at 479-80 (if any personal or financial relationship constituted disqualifying partiality, "the entire commercial arbitration system ... would be undermined").

## II

The principles and circumstances that counsel tolerance of certain undisclosed relationships between arbitrator and litigant are even more indulgent of party-appointed arbitrators, who are expected to serve as *de facto* advocates. "[I]n the main party-appointed arbitrators are supposed to be advocates." Sphere Drake, 307 F.3d at 620; see generally Ostrager, supra at 538-39.[3] The ethos of neutrality that informs the selection of a neutral arbitrator to a tripartite panel does not animate the selection and qualification of arbitrators appointed by the parties. See Instituto de Resseguros do Brasil v. First State Ins. Co., 577 N.Y.S.2d 287 (1st Dept. 1991) (a party-appointed arbitrator is "not expected to be neutral in the same sense as a judge or arbitral umpire"); Astoria Medical Grp. v. Health Ins. Plan of Greater N.Y., 227 N.Y.S.2d 401, 404 (1962) ("[T]here has grown a common acceptance of the fact that the party-designated

---

[3] In Floradsynth, Inc. v. Pickholz, 750 F.2d 171 (2d Cir. 1984), we were confronted with another tripartite arbitration panel and observed that the "two [party-appointed arbitrators] were not to act merely as partisan advocates directing argument to a third [arbitrator] who would act as umpire" and that the arrangement instead suggested "the three arbitrators were intended to serve and act as one board." Id. at 173. However, that observation was *dictum* only, see id. at 174-74; see also Scandinavian Reinsurance, 668 F.3d at 76 n.21 (noting that Florasynth only "suggest[ed]" party-appointed arbitrators not act as advocates), and we therefore are not bound by that language today.

arbitrators are not and cannot be 'neutral,' at least in the sense that the third arbitrator or a judge is.").

Of equal importance, arbitration is a creature of contract, and courts must hold parties to their bargain. ICA and the Underwriters have chosen a tripartite panel with party-appointed arbitrators who are "relieved of all judicial formalities and may abstain from following the strict rules of law." J. App'x at 593. "[P]arties are free to choose for themselves to what lengths they will go in quest of impartiality," including the various degrees of partiality that inhere in the party-appointment feature. Sphere Drake, 307 F.3d at 622 (noting that the impartiality protections of Section 10(a)(2) may be altered or waived by mutual consent); see also Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 478-79 (1989) (emphasizing how "parties are generally free to structure their arbitration agreements as they see fit," including "specify[ing] by contract the rules under which the arbitration will be conducted"); Nat'l Football League Mgm't Council, 820 F.3d at 548 ("parties to [] arbitration can ask for no more impartiality than inheres in the method they have chosen").

Many of our sister circuits have therefore held that the disclosure requirements for neutral arbitrators "do[] not extend to party-appointed arbitrators." Winfrey v. Simmons Foods, Inc., 495 F.3d 549, 552 (8th Cir. 2007); accord Nationwide Mut. Ins. Co. v. Home Ins. Co., 429 F.3d 640, 645 (6th Cir. 2005) (alleged business and social contacts between arbitrator and party counsel did not warrant a finding of evident partiality, "particularly where, as here, the complaint of evident partiality concerns a party appointed, as opposed to neutral, arbitrator"); Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 759 (11th Cir. 1993) (distinguishing between party-appointed and neutral arbitrators); Lozano v. Maryland Cas. Co., 850 F.2d 1470, 1472 (11th Cir. 1988) (same). Some courts have gone so far as to suggest that when parties contract to allow selection of their own arbitrators, the FAA's evident partiality rules do not apply. Sphere Drake, 307 F.3d at 622 ("To the extent that an agreement entitles parties to select interested (even beholden) arbitrators, [Section] 10(a)(2) has no role to play.").

11

The Second Circuit has not had occasion to decide the standard for a Section 10(a)(2) evident partiality challenge to a party-appointed arbitrator. In Scandinavian Reinsurance, we acknowledged that the issue remained unresolved; but we reserved decision on "whether the FAA imposes a heightened burden of proving evident partiality in cases in which the allegedly biased arbitrator was party-appointed" because the arbitrator in that case had made sufficient disclosures even under the more relaxed standard for neutrals. 668 F.3d at 76 n.21. Here the question is squarely and unavoidably presented because the district court's sound findings on Campos's improprieties are substantial under the traditional Morelite test.[4] Moreover, the district court expressly declined ICA's invitation to apply a heightened burden for the Underwriters' evident partiality challenge in view of Campos's role as a party-appointed arbitrator, and ruled that "Campos's conduct must be considered under the same evident partiality standard as is required in all arbitrations." Certain Underwriting Members v. Ins. Co. of the Am., 2017 WL 5508781, at *11.

We respectfully part ways with the district court, and instead join the circuits that distinguish between party-appointed and neutral arbitrators in considering evident partiality. This distinction is salient in the reinsurance industry, where an arbitrator's professional acuity is valued over stringent impartiality. It also meshes with our case law and takes into account the FAA,

---

[4] The district court was disturbed by Campos's lack of candor, but also by the length and number of his connections. Not all of them are significant. Even holding Campos to the standard of a neutral arbitrator, the relationships between his company, Vensure, and John Iorillo, Robert Morely, and Benton Morely are likely too remote, indirect, and removed in time from the arbitration to be material. See Lucent Techs., 379 F.3d at 31; Scandinavian Reinsurance, 668 F.3d at 72, 74. And the presence of two insurance agencies within the same Arizona business park does not reach the level of clear partiality. See Merck, 2016 WL 4491141, at *10. Campos's on-going relationship with Ricardo Rios is more direct, intimate, and more closely proximate to the arbitration; Rios also offered testimony before the panel. Rios's credibility (in which Campos may have been invested) could have been material to the Award.

12

which restricts "*evident* partiality" as opposed to "partiality" or "appearance of bias." 9 U.S.C. § 10(a)(2); Morelite, 748 F.2d at 83-84 (requiring "something more than the mere 'appearance of bias' to vacate an arbitration award"); Sphere Drake, 307 F.3d at 621 ("only *evident* partiality, not appearances or risks, spoils an award"). Expecting of party-appointed arbitrators the same level of institutional impartiality applicable to neutrals would impair the process of self-governing dispute resolution.

That said, a party-appointed arbitrator is still subject to some baseline limits to partiality. We decline to catalogue all "material relationship[s]" that may bear upon the service of a party-appointed arbitrator. Lucent Techs., 379 F.3d at 28.[5] But it can be said that an undisclosed relationship is material if it violates the arbitration agreement. See Sphere Drake, 307 F.3d at 622. In this case, the qualification in the contract is "disinterested," which would be breached if the party-appointed arbitrator had a personal or financial stake in the outcome of the arbitration. See, e.g., Trustmark Ins. Co. v. John Hancock Life Ins. Co., 631 F.3d 869, 872-73 (7th Cir. 2011) (determining "disinterested," as used in arbitration agreement, "means lacking a financial or other personal stake in the outcome"); see also ARIAS-U.S. Practical Guide to Reinsurance Arbitration Procedure, ¶ 2.3 (rev. ed. 2004) ("[A]rbitration clauses requiring 'disinterested'

---

[5] Several tests have been proposed for neutrals. See Sanford Home for Adults v. Local 6, IFHP, 665 F. Supp. 312, 320 (S.D.N.Y. 1987) (proposing a three-part test for evaluating the partiality of an arbitrator: "(1) the financial interest the arbitrator has in the proceeding; (2) the directness of the alleged relationship between the arbitrator and a party to the arbitration proceeding; and (3) the timing of the relationship with respect to the arbitration proceeding"); see also Scandinavian Reinsurance Co., 668 F.3d at 74 (citing with approval a four-factor test from ANR Coal Co. v. Cogentrix of N.C., Inc., 173 F.3d 493, 500 (4th Cir. 1999)). However, these tests are designed to evaluate the partiality of a neutral. See ANR Coal Co., 173 F.3d at 497 (ANR alleged that the neutral arbitrator selected as umpire was partial to Cogentrix); Vigorito v. UBS PaineWebber, Inc., 477 F. Supp. 2d 481, 486-87 (D. Conn. 2007) (applying the Sanford Home factors to an arbitrator appointed through the random assignment "list selection" method). So we are not relying upon them as exhaustive or outcome-definitive here.

arbitrators … mean that arbitrators may have no financial interest in the arbitration outcome and are not under any party's control.").

An undisclosed fact is also material, and therefore warrants vacatur, if the party opposing the award can show that the party-appointed arbitrator's partiality had a prejudicial effect on the award.   See Delta Mine Holding Co. v. AFC Coal Props., Inc., 280 F.3d 815, 821 (8th Cir. 2001) ("[W]here the parties have expressly agreed to select partial party arbitrators, the award should be confirmed unless the objecting party proves that the arbitrator's partiality prejudicially affected the award."); Nationwide Mut. Ins. Co., 429 F.3d at 649 (instructing that undisclosed social or business contacts must be related "to the subject matter of the litigation before the arbitrator" to be material); see also Commonwealth Coatings, 393 U.S. at 146 ("the relationship even went so far as to include the rendering of services on the very projects involved in th[e] lawsuit.").   In the absence of a clear showing that an undisclosed relationship (or the non-disclosure itself) influenced the arbitral proceedings or infected an otherwise-valid award, that award should not be set aside even if a reasonable person (or court) could speculate or infer bias.   See Merck & Co., 2016 WL 4491141 at *9 (party opposing the award must "identif[y] [a] direct connection between [the arbitrator] and the outcome of the arbitration"); accord Scandinavian Reinsurance, 668 F.3d at 78 ("possibilities" that arbitrators could be influenced by each other's thinking on concurrent panels "do not establish bias").

We vacate and remand for the district court to determine whether the Underwriters have shown by clear and convincing evidence that the failure to disclose by party-appointed arbitrator Campos either violates the qualification of disinterestedness or had a prejudicial impact on the award.   At the district court's discretion, this undertaking may necessitate additional proceedings.   Cf. Sanko S.S. Co. v. Cook Indus., 495 F.2d 1260, 1265 (2d Cir. 1973) (remanding for the district court to give full consideration to further evidence bearing upon an arbitrator's undisclosed business relationships).   The district court did not consider the Underwriters' challenges as to manifest disregard of the law and prejudicial procedural misconduct; nor do we.

14

## CONCLUSION

For the foregoing reasons, we hereby **VACATE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.