**LUCENT TECHNOLOGIES, INC., and Lucent Technologies GRL, LLC, Petitioners,**

v.

**TATUNG CO., Respondent.**

No. 02 Civ. 8107(JSR).

United States District Court,
S.D. New York.

June 26, 2003.

---

Marjorie Press Lindblom, Allan Kellman, John Desmarais, Kirkland & Ellis, New York City, for Petitioners.

Jerald M. Stein, Law Offices of Jerald M. Stein, New York City, Julian M. Baum, Robert C. Weems, Baum & Weems, Sam Anselmo, CA, for Respondent.

1. Now known as Lucent Technologies GRL, LLC. Petition for Confirmation of Arbitration

## MEMORANDUM ORDER

RAKOFF, District Judge.

Pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38, *reprinted at* 9 U.S.C.A. § 201 (West 1999) ("Convention"), Lucent Technologies, Inc. and Lucent Technologies GRL, LLC (collectively, "Lucent") petition to confirm an arbitration award against respondent Tatung Co. In response, Tatung moves to vacate or modify the award, attacking both the neutrality of the arbitration panel and the substance of the award.

The core dispute between the parties concerns a Patent License Agreement that Tatung allegedly breached by failing to pay royalties. In 1998, Lucent Technologies, Inc. and the Industrial Technology Research Institute of China ("ITRI") cross-licensed their patent pools, and Lucent Technologies, Inc. gave Lucent Technologies GRL Corp.[1] the authority to grant licenses and releases on its behalf under the agreement. *See* Patent License Agreement, Petition for Confirmation of Arbitration Award ("Petition") Ex. B; Award of Arbitrators ("Award"), Petition Ex. A ¶¶ 16–18. With Lucent's and ITRI's approvals, Tatung signed on to the Patent License Agreement as an "affiliated company" in 1999. *See* Supplemental Agreement, Petition Ex. C; Award, Petition Ex. A ¶¶ 21–24. Tatung agreed to pay Lucent Technologies GRL Corp. 0.1 percent of its "total revenue" in exchange for licenses to Lucent's patents from 1999–2003. In addition, Lucent, in exchange for an additional $4.5 million from Tatung (paid in nine semi-annual installments), agreed to re-

Award ¶ 3.

lease Tatung from liability for any prior infringement. *See* Alternate Payment Provision, Petition Ex. D. at 1, 3; Award, Petition Ex. A ¶¶ 25–27.

In October 2000, after the parties proved unable to agree on an interpretation of these agreements, Lucent, pursuant to the arbitration provision of the Patent License Agreement, demanded arbitration. *See* Patent License Agreement, Petition Ex. B ¶ 4.05(a). In familiar fashion, the arbitration provision required each side to appoint a party arbitrator, with the two party arbitrators then selecting a third, neutral arbitrator. *Id.* As its party arbitrator, Lucent selected J. David Luening.

Lucent had previously retained Luening as a paid expert witness in an unrelated litigation, *Lucent Techs., Inc. v. Newbridge Networks Corp.*, No. 97–CV–347 (D.Del.), in which he completed his work in November 1999 and submitted his final invoice in January 2000, although final judgment in the case was not entered until May 2002 because of post-trial motions. *See* Declaration of Robert C. Weems, dated Jan. 20, 2003 ("Weems Decl."), Ex. 11; Declaration of Alan S. Kellman, dated Feb. 10, 2003 ("Kellman Decl."), ¶¶ 2–4. Although Luening, in conjunction with his appointment as a party arbitrator in the instant case, disclosed this relationship to the American Arbitration Association ("AAA") in April 2002, *see* Declaration of Marjorie Press Lindblom, dated Feb. 10, 2003 ("Lindblom Decl."), Ex. 4, Tatung asserts that the disclosure form never reached Tatung or its counsel, *see* Declaration of Peter Rundle, dated Jan. 6, 2003, ¶ 3, who therefore did not learn of the relationship until after the arbitration award issued, *see* transcript, Feb. 25, 2003, at 19–20. Also, after the neutral arbitrator, Roger Smith, was selected, Luening failed to disclose that he and Smith, who used to work together, had

jointly owned a small private plane between 1974 and 1990. *See* Declaration of Julian Baum, dated Jan. 23, 2003, ¶ 3 & Ex. A.

Eight days before the arbitration hearing on the merits scheduled for May 28, 2002, Tatung changed counsel and requested a three-month adjournment. Weems Decl. Ex. 22. During a conference call with the panel to discuss that request, one of Lucent's attorneys alleged that Tatung was late in paying its share of the arbitration costs (including the arbitrators' compensation) and, according to Tatung, suggested that as a sanction Tatung should be barred from offering evidence on its behalf.[2] Weems Decl. ¶¶ 3–4. In a letter to the panel, Lucent also suggested that the panel require Tatung to post a $25.6 million bond to secure, *inter alia*, monies that might be due if Lucent prevailed, including portions of the arbitrators' compensation. Weems Decl. Ex. 25 at 3–4. Tatung objected that the arbitrators should not consider matters related to their own compensation, Weems Decl. Ex. 26, and moved to dismiss the panel as tainted, Weems Decl. ¶ 6 & Ex. 23. The AAA administrator denied this request, and the panel adjourned the hearing on the merits until July 1, 2002 without mentioning Tatung's payments, requiring a bond, or sanctioning Tatung. Weems Decl. Exs. 27, 29.

After nine days of hearings, the panel issued an award to Lucent in the amount of $12,665,639, *see* Award ¶ 1, which Lucent petitioned to confirm. The award was subsequently corrected to $12,551,613, *see* Order Regarding Tatung's Request for Correction of the Award, Dec. 2, 2002, and Lucent has consented to modify its petition to confirm the award as corrected, *see* Letter from Marjorie Press Lindblom, Dec. 13, 2002.

---

**2.** Lucent disputes this account of the call. Lindblom Decl. ¶¶ 16–17.

Tatung's first set of arguments to vacate the award concern the neutrality of the arbitration panel. Tatung contends, first, that vacatur is appropriate because Tatung was ignorant of the relationships between Luening and Lucent's counsel on the one hand, and Luening and the neutral arbitrator on the other, and that those relationships render the panel evidently partial. *See* 9 U.S.C.A. § 10(a)(2) (West 1999); *Commonwealth Coatings Corp. v. Continental Cas. Co.*, 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968).[3] The Second Circuit has approached allegations of non-disclosure "pragmatically," however, and refused to vacate an award where a party "knew or should reasonably have known, of the undisclosed dealings." *In re Andros Compania Maritima, S.A., Marc Rich & Co., A.G.*, 579 F.2d 691, 700 (2d Cir.1978) (internal quotation marks omitted); *accord Sanko S.S. Co. v. Cook Indus., Inc.*, 495 F.2d 1260, 1265 (2d Cir. 1973); *Cook Indus., Inc. v. C. Itoh & Co. (America), Inc.*, 449 F.2d 106, 108 (2d Cir.1971). Tatung's motion papers betray that at no point did it request from the arbitrators, Lucent, its counsel, or the AAA, the disclosure form that Tatung knew existed based on its receipt of Roger Smith's disclosure form and the submission of its own arbitrator. *See* Kellman Decl. Ex. 1; Weems Decl. Ex. 15. Tatung "could have made such a review just as easily before or during the arbitration rather than after it lost its case," suggesting that this is "a classic example of a losing party seizing upon 'a pretext for invalidating the [arbitration] award.'" *Andros*, 579 F.2d at 702.

This is not to say that Tatung waived its objection to Luening by failing to investigate, *see Morelite Constr. Corp.*

*v. N.Y. City Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 84 n. 5 (2d Cir. 1984), but rather that the principle that a material undisclosed conflict requires automatic vacatur, *see Commonwealth Coatings*, 393 U.S. at 149, 89 S.Ct. 337, plainly does not apply where an arbitrator "has completely followed his obligations under the [AAA] rules," *Reed & Martin, Inc. v. Westinghouse Elec. Corp.*, 439 F.2d 1268, 1275 (2d Cir.1971), but a party remains ignorant despite the arbitrator's disclosure. Luening disclosed his relationship, and it would serve no public purpose to vacate the award merely because the disclosure did not reach Tatung. Instead of rewarding diligence at the beginning of arbitration proceedings, such a result would "encourage the losing party to every arbitration to conduct a background investigation of each of the arbitrators in an effort to uncover evidence of a former relationship with the adversary." *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 683 (7th Cir.1983).

Moreover, even if (contrary to fact) Luening had failed to disclose his relationship with Lucent, the relationship itself, would not compel "a reasonable person ... to conclude that an arbitrator was partial to one party to the arbitration," the standard used in evaluating a motion to vacate pursuant to 9 U.S.C.A. § 10(a)(2) (West 1999). *Morelite*, 748 F.2d at 84; *see also Int'l Produce, Inc. v. A/S Rosshavet*, 638 F.2d 548, 551 (2d Cir.1981) (holding there was no evident partiality where arbitrator was also a non-party witness in another matter involving the same law firms before him as arbitrator). Luening's prior relationship with Lucent had terminated in all material respects before Lucent's counsel solicited Luening's participation in the in-

---

**3.** Because the award was rendered in the United States, federal law applies in evaluating its validity. *See Yusuf Ahmed Alghanim &* *Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 20–21 (2d Cir.1997).

stant arbitration, and Luening had no interest in the arbitration's outcome. Nothing about the relationship "provides strong evidence of partiality by the arbitrator" that would justify vacating the award. *Morelite*, 748 F.2d at 85.

Luening and Smith's previous airplane co-ownership is also "too insubstantial to warrant vacating an award." *Commonwealth Coatings*, 393 U.S. at 152, 89 S.Ct. 337 (White, J., concurring). As the Second Circuit has recognized, such prior connections are not unusual given the "tightly knit professional communities" from which arbitrators expert in a given area will likely be drawn. *Morelite*, 748 F.2d at 83. Here, the relationship between Luening and Smith ended more than a decade before the arbitration began. Furthermore, Tatung was on notice that both these arbitrators previously worked at IBM, Kellman Decl. ¶ 7; Lindblom Decl. Exs. 6 & 7, and it could have investigated the scope of their relationship before it lost the arbitration, *Andros*, 579 F.2d at 702. Finally, Tatung has pointed to no case in which evident partiality was found because of a prior relationship between arbitrators, as opposed to an arbitrator and a party or its counsel. Absent evidence that either arbitrator was partial to Lucent, no inference of partiality can be drawn from Luening's relationship with Smith. *Cf. Humbert v. Zaner*, No. 90 Civ. 843, 1991 WL 19822, at *4 (S.D.N.Y. Feb.8, 1991).

■ Tatung next argues that Lucent prejudiced the panel by accusing Tatung of failing to timely pay the arbitrators' fees, and that the award should be vacated because it was thereby "procured by … undue means" or the result of "misbehavior" by the panel. 9 U.S.C.A. §§ 10(a)(1), (3) (West 1999). Here, however, Lucent's application was reasonable in light of the AAA rule allowing a panel to suspend proceedings when fees are overdue. *See* AAA Int'l Rules of Arbitration, Weems Decl. Ex. 9, art. 33, ¶ 3; *cf. Polin v. Kellwood Co.*, 103 F.Supp.2d 238, 256–57 (S.D.N.Y. 2000). As Lucent argued to the AAA administrator, any obligation by Lucent to front Tatung's share of the arbitration costs in order to obtain an award on Lucent's claims did not involve an obligation to pay the arbitration costs for Tatung to present its own fraud claim. Weems Decl. Ex. 28 at 5. In any event, Tatung has failed to show how it was prejudiced by Lucent's actions, since the panel granted Tatung an adjournment, decided the fee issue was "moot," and did not require Tatung to post a bond. Weems Decl. ¶¶ 7–8 & Ex. 27.

■ Although, in addition to the foregoing collateral attacks, Tatung also attacks the merits of the panel's decision, it is well-settled that the substance of an arbitration award is reviewed only to determine whether the arbitrator "manifestly disregarded" the law or the terms of the parties' agreement. *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 209 (2d Cir.2002); *see also Yusuf*, 126 F.3d at 24–25. To modify or vacate an award on this ground, a court must find that the arbitrators knew of a governing legal principle that was well-defined, explicit, and clearly applicable to the case, yet refused to apply it. *Westerbeke*, 304 F.3d at 209. Similarly, an arbitrator's contract interpretation will not be disturbed unless he "merely 'mak[es] the right noises—noises of contract interpretation'—while ignoring the clear meaning of contract terms." *Yusuf*, 126 F.3d at 25.

■ Here, after considering the relevant agreements as well as extrinsic evidence of the parties' intent, the arbitrators found that the term "Tatung's total revenue" in the Alternate Payment Provision included the revenue of Tatung Co.'s subsidiaries. Award ¶¶ 45–82. While Tatung

contends this was clear error because the royalty calculation does not refer to Tatung's "related companies" (defined by the Patent License Agreement to include subsidiaries), Tatung "merely takes issue with the arbitrator[s'] well-reasoned interpretations" and offers nothing to suggest that the panel manifestly disregarded the agreement, instead of merely rejecting Tatung's proffered readings. *Yusuf*, 126 F.3d at 25. The same is true of Tatung's arguments that the panel erred in finding that Lucent's termination of Tatung's licenses did not affect either party's obligations under the release. Award ¶¶ 83–90, 98.

As to the panel's decision, pursuant to the doctrine of anticipatory breach, to accelerate the remaining release payment of $500,000 so that it was due immediately upon issuance of the Award last fall, Award ¶ 90, while there is authority suggesting the doctrine of anticipatory breach does not apply here, *see Wallace Clark & Co. v. Acheson Indus., Inc.*, 422 F.Supp. 20, 23 n. 6 (S.D.N.Y.1976), there is at least a "colorable" argument that some performance remained on Lucent's part pursuant to the Patent License Agreement, which compels confirmation of the award, *Westerbeke*, 304 F.3d at 212 n. 8. The panel's decision to accelerate the payment[4] is not "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply

the law," *Fahnestock & Co. v. Waltman*, 935 F.2d 512, 516 (2d Cir.1991) (internal quotation marks omitted). The respondent has not shown that the panel "willfully flouted the governing law," *Westerbeke*, 304 F.3d at 217, and accordingly, the Court will not disturb the panel's decision to accelerate the release payment.

While Tatung also objects that the panel awarded prejudgment interest at the New York State rate and not the federal rate provided for in 28 U.S.C. § 1961, it has provided no evidence that the two rates were any different during the period here relevant.[5]

Finally, while Tatung argues that the arbitrators erred in finding that Lucent Technologies, Inc. was a proper party to the arbitration award, even though the Alternate Payment Provision was between Tatung and Lucent Technologies GRL Corp., the panel did not manifestly disregard either the agreements or the law in this regard, *see* Order Regarding Tatung's Motion to Dismiss Lucent Technologies, Inc., Petition Ex. A. Moreover, since the award prevents double recovery, Award ¶ 1, any error in this decision is of no consequence: Tatung may satisfy its obligations by paying Lucent Technologies GRL, LLC.[6]

Accordingly, for the aforementioned reasons, respondent's motion to vacate the award is denied, and the petition to con-

---

4. Which, by any account, was due March 1, 2003, making the issue now moot except as to interest.

5. Even were the rates different, however, the Court would affirm the arbitrators' exercise of discretion in this respect, *see* AAA Int'l Rules of Arbitration, Weems Decl. Ex. 9, art. 28, ¶ 4; *Waterside Ocean Navigation Co. v. Int'l Navigation Ltd.*, 737 F.2d 150, 154 (2d Cir.1984); *see also Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1447 & n. 17 (11th Cir.1998), as neither the Convention nor 28 U.S.C. § 1961 "purports to con-

trol the rate of prejudgment interest," *Jones v. UNUM Life Ins. Co. of America*, 223 F.3d 130, 139 (2d Cir.2000).

6. Respondent's related argument that Lucent Technologies GRL, LLC must be dismissed from this action because only its predecessor, Lucent Technologies GRL Corp., was a party to the arbitration is rejected for the same reasons given the first time Tatung raised this objection. *See* Memorandum Order, Feb. 18, 2003, at 3–4.

firm the award as modified on consent is granted. Clerk to enter judgment for petitioners in the amount of $12,551,613 plus interest at a rate of 9 percent per annum from September 1, 2002 until the date judgment enters, with post-judgment interest calculated pursuant to 28 U.S.C. § 1961 thereafter.

SO ORDERED.