**LUCENT TECHNOLOGIES INC. and Lucent Technologies GRL LLC, Petitioners–Appellees,**

v.

**TATUNG CO., Respondent–Appellant.**

No. 03–7741.

United States Court of Appeals, Second Circuit.

Argued: May 10, 2004.

Decided: Aug. 3, 2004.

an arbitral award in favor of petitioners Lucent Technologies Inc. and Lucent Technologies, GRL LLC (together, Lucent) and rejecting Tatung's arguments that the award should be vacated because of arbitrator bias. On appeal, Tatung argues that the court's judgment should be reversed and the award vacated because (1) Tatung never received the disclosure form submitted to the American Arbitration Association (AAA) by arbitrator J. David Luening; (2) Luening's service as an expert witness for Lucent in an unrelated matter constituted "evident partiality" requiring vacatur; and (3) Luening and fellow arbitrator Roger Smith failed to disclose their joint ownership of an airplane between 1974 and 1990. In the alternative, Tatung argues, this court should remand the case to the district court for discovery concerning the relationships between Luening, Lucent and Lucent's attorneys and between Luening and Smith. For reasons set forth below, we affirm the judgment of the district court.

Marjorie Press Lindblom (John M. Desmarais, Alan S. Kellman and Michael G. Strapp, on the brief), Kirkland & Ellis LLP, New York, NY, for Petitioners–Appellees.

Robert Weems, Baum & Weems, San Anselmo, CA (Jeffrey Pollack, Mintz & Gold LLP, New York, NY, on the brief; Jerald M. Stein, Law Offices of Jerald M. Stein, New York, NY, on the brief), for Respondent–Appellant.

Before: FEINBERG, MESKILL, and CABRANES, Circuit Judges.

FEINBERG, Circuit Judge.

Respondent Tatung Co. appeals from a July 2003 judgment of the United States District Court for the Southern District of New York (Jed S. Rakoff, J.)[1], confirming

## I. Background

In October 2000, Lucent initiated arbitration against Tatung, a Taiwanese corporation, because of Tatung's alleged failure to pay any of the royalties required by their patent licensing agreement with Lucent. Under the agreement, each party was to appoint one member of the arbitration panel. The two party-appointed panel members would then choose a third neutral member. The agreement also specified that the arbitration was to be governed by the International Rules of the American Arbitration Association (AAA).

---

1. Jurisdiction over Lucent's petition was based on 9 U.S.C. § 203, which grants the district court jurisdiction over actions falling under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, and on 28 U.S.C. § 1332(a)(2) because there was complete diversity of citizenship between the parties and the matter in controversy exceeded $75,000.

Pursuant to Article 7, paragraph 1 of those Rules:

> Prior to accepting appointment, a prospective arbitrator shall disclose to the administrator any circumstance likely to give rise to justifiable doubts as to the arbitrator's impartiality or independence.... Upon receipt of such information from an arbitrator or party, the administrator shall communicate it to the other parties and to the tribunal.

Moreover, arbitrators are required to file a "Notice of Appointment" form disclosing "any past or present relationship with the parties or their counsel, direct or indirect, whether financial, professional, social or of any other kind." The form explains that "[t]he AAA will call the facts to the attention of the parties' counsel."

On March 2, 2001, Lucent named J. David Luening as its choice for the panel of arbitrators. On his AAA disclosure form, Luening checked the box marked "I HEREBY DISCLOSE THE FOLLOWING" and wrote "SEE ATTACHED MEMORANDUM." In the attached memorandum, Luening explained that "[f]rom April, 1998, to December, 1999, I was retained by Lucent through their counsel, Kirkland and Ellis, as a litigation consultant and expert. That engagement has concluded and has no bearing on the subject arbitration." Luening's form was dated April 25, 2001. A fax line at the top of each page indicates that Luening faxed his materials to the AAA on April 30, 2001, and a date stamp indicates that the AAA received those materials that same day. Tatung alleges that it never received Luening's disclosure form from the AAA.

On March 2, 2001, Tatung named Ed Fiorito as its party-appointed arbitrator. On the disclosure form he filed with the AAA, Fiorito checked the box indicating he had nothing to disclose. Tatung apparently never received that form either. In May, Luening suggested Roger Smith as the third, neutral arbitrator, and Fiorito apparently agreed. On September 4, 2001, Smith was appointed to the arbitration panel. Smith disclosed to the AAA that he was of counsel to a firm that does work for Lucent. Tatung received Smith's disclosure form from the AAA. All three arbitrators were one-time employees of IBM. Tatung never asked about the missing disclosure forms and raised no objections concerning the arbitrators' identities until after it received notice that it had lost the arbitration.

After granting a delay of the arbitration hearing to accommodate Tatung's substitution of counsel—over Lucent's objection—nine days of hearings were eventually held. In October 2002, all three arbitrators found in favor of Lucent and voted to award it damages. The three disagreed only as to the amount. Luening and Smith awarded $12,665,639; Fiorito would have awarded $8,479,264. Pursuant to Tatung's request, the award was later lowered to $12,551,613 plus interest.

Thereafter, Lucent petitioned in the Southern District for confirmation of the award.[2] In response, Tatung moved to vacate the award arguing, among other things, that Luening and Lucent had failed to disclose that Luening had been a paid patent license expert for Lucent in another case, *Lucent Technologies, Inc. v. Newbridge Networks Corp.*, No. 97–CV–347 (D.Del.) ("the Delaware case"), that was not yet final at the time the arbitration began. Tatung also complained that it was undisclosed that Luening and Smith

---

**2.** Tatung initially moved to dismiss the petition claiming, among other things, that it had not been properly served and that Lucent Technologies, GRL LLC lacked standing. The court denied the motion in February 2003.

had owned an airplane together from 1974 to 1990.

Tatung, which had apparently never asked the AAA about Luening's disclosure form, accused Lucent and Luening of intentionally hiding Luening's service as an expert witness for Lucent in the Delaware case. Tatung pointed out that the same lawyers had represented Lucent in that case and in the current arbitration. Tatung argued that although judgment had been entered in the Delaware case in November 1999, Luening's testimony was implicated in a new trial motion that was not denied until September 21, 2001, more than six months after his appointment as an arbitrator in Tatung's controversy with Lucent. Further, an appeal was pending until as late as October 30, 2002. Tatung argued that the failure of Luening and Lucent to disclose these facts constituted "evident partiality" under *Commonwealth Coatings Corp. v. Continental Cas. Co.*, 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968), requiring vacatur of the award. Luening and Smith's failure to disclose their co-ownership of an airplane, Tatung added, also constituted "evident partiality" and required vacatur as well.

The district court rejected Tatung's arguments and confirmed the award. The court found that Luening had in fact disclosed his relationship with Lucent to the AAA and that his service as an expert witness had ended by November 1999, months before being selected as an arbitrator in this matter. Further, Judge Rakoff observed that Tatung could have discovered that relationship at any time had it simply asked the AAA, Luening or Lucent about the disclosure form Tatung must have known to have existed. This fact suggested to the court that Tatung's argument was a "classic example of a losing party seizing upon a pretext for invalidating the [arbitration] award." *Lucent*

*Techs., Inc. v. Tatung Co.*, 269 F.Supp.2d 402, 405 (S.D.N.Y.2003) (internal citation and quotation marks omitted).

Most important, the district court held that *Commonwealth Coatings* does not require vacatur where the arbitrator has disclosed potential conflicts of interest to the AAA but the AAA thereafter did not forward the information to a party. Judge Rakoff noted that requiring vacatur under such circumstances "would serve no public purpose." *Id.* Further, the court held, Luening's relationship with Lucent was not sufficiently suggestive of partiality to require vacatur under *Morelite Construction Corp. v. New York City District Council Carpenters Benefit Funds*, 748 F.2d 79 (2d Cir.1984). The judge also held that Luening and Smith's previous co-ownership of an airplane was " 'too insubstantial to warrant vacating an award,' " *Lucent Techs.*, 269 F.Supp.2d at 406 (quoting *Commonwealth Coatings*, 393 U.S. at 152, 89 S.Ct. 337 (White, J., concurring)).

This appeal followed.

## II. Discussion

In this court, Tatung argues that the district court erred in failing to find bias. Tatung no longer claims that Luening did not disclose the contested relationship to the AAA. However, Tatung argues that *Commonwealth Coatings* requires vacatur whenever a party fails to receive notice of the disclosure, even if the fault lies with the AAA rather than with the arbitrator or a party. Tatung argues that Luening's relationship with Lucent and Luening's relationship with Smith both require vacatur for nondisclosure. Further, Tatung claims that the relationship between Luening and Lucent so strongly suggested partiality that it requires vacatur of the arbitration award even though it had been disclosed by Luening to the AAA. Finally, Tatung argues that if this

court chooses not to vacate the award on these bases, we should at the very least remand to the district court for discovery regarding the contested relationships. We consider each of these arguments in turn. Although we review the district court's rulings on issues of law de novo, we review its factual findings in confirming the arbitration award for clear error. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 947–48, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

## A. Should the Arbitration Award be Vacated Because of Nondisclosure?

### 1. Luening's expert testimony for Lucent

■ Tatung argues that under the Supreme Court's holding in *Commonwealth Coatings,* as well as this circuit's precedent interpreting it, an arbitration award must be vacated when one party is not informed of a material relationship between the other party and an arbitrator. Tatung claims that under this supposed rule it was Luening and Lucent's responsibility to guarantee that Tatung was informed of their relationship. According to Tatung, Lucent received copies of all correspondence between Tatung and the AAA and should thus have known that Tatung never received Luening's disclosure form.

Under the Federal Arbitration Act, an arbitration award should be vacated "[w]here there [is] evident partiality or corruption in the arbitrators, or either of them." 9 U.S.C. § 10(a)(2). In *Commonwealth Coatings,* the Supreme Court held that an arbitrator's failure to disclose a material relationship with one of the parties can constitute "evident partiality" requiring vacatur of the award. 393 U.S. at 147–48, 89 S.Ct. 337. Along with concerns about the appearance of bias that might result from such nondisclosure, *id.* at 150,

89 S.Ct. 337, the Court reasoned that the arbitration process would be best served by requiring early disclosure of any significant dealings between arbitrators and parties. *Id.* at 151, 89 S.Ct. 337 (White, J., concurring). "The judiciary should minimize its role in arbitration as judge of the arbitrator's impartiality," and a policy of early disclosure would limit the opportunities for "a suspicious or disgruntled party [to] seize on [an undisclosed relationship] as a pretext for invalidating the award." *Id.*

This court has, in turn, "viewed the teachings of *Commonwealth Coatings* pragmatically, employing a case-by-case approach in preference to dogmatic rigidity." *Andros Compania Maritima, S.A. v. Marc Rich & Co.,* 579 F.2d 691, 700 (2d Cir.1978). "[W]e have not been quick to set aside the results of an arbitration because of an arbitrator's alleged failure to disclose information." *Id.* In particular, we have declined to vacate awards because of undisclosed relationships where the complaining party should have known of the relationship, see *Cook Indus., Inc. v. C. Itoh & Co. (America),* 449 F.2d 106, 107–08 (2d Cir.1971), or could have learned of the relationship "just as easily before or during the arbitration rather than after it lost its case." *Andros,* 579 F.2d at 702. We have also noted that "a principal attraction of arbitration is the expertise of those who decide the controversy," that "[e]xpertise in an industry is accompanied by exposure ... to those engaged in it, and the dividing line between innocuous and suspect relationships is not always easy to draw." *Id.* at 701.

Tatung cites no case from the Supreme Court or this court that has vacated an award for nondisclosure where the arbitrator has complied with his obligation to

disclose potential sources of partiality.[3] See, e.g., *Reed & Martin, Inc. v. Westinghouse Elec. Corp.*, 439 F.2d 1268, 1275 (2d Cir.1971) ("The arbitration award cannot be set aside where an arbitrator has completely followed his obligations under the rules."). In this case, it is undisputed that Luening disclosed his work as an expert witness for Lucent to the AAA. If Tatung failed to receive Luening's disclosure form, the fault lies with the AAA and not with Luening or Lucent. The concern, noted in *Commonwealth Coatings*, that nondisclosure might create an appearance of bias or even be evidence of bias is simply not present in this case. There is no basis to argue that Luening and Lucent intended to hide their relationship from Tatung.

Furthermore, Tatung's proposed rule—that parties to an arbitration, in effect, guarantee that opposing parties obtain arbitrator disclosures [4]—would make the results of arbitration less rather than more certain and would run counter to the general policy of encouraging and supporting arbitration. See *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24–25, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The *Commonwealth Coatings* requirement that any "relationship be disclosed at the outset" encourages conflicts over arbitrators to be dealt with early in the arbitration process and helps limit the availability of collateral attacks on arbitration awards by a "disgruntled party." 393 U.S. at 151, 89 S.Ct. 337 (White, J., concurring). Tatung's proposed rule, on the other hand, encourages parties to remain ignorant of potential conflicts until after losing in arbitration. As Judge Rakoff explained, "[i]nstead of rewarding diligence at the beginning of arbitration proceedings, such a result would 'encourage the losing party to every arbitration to conduct a background investigation of each of the arbitrators in an effort to uncover evidence of a former relationship with the adversary.'" *Lucent Techs., Inc.*, 269 F.Supp.2d at 405 (quoting *Merit Ins. v. Leatherby Ins. Co.*, 714 F.2d 673, 683 (7th Cir.1983)). Only after obtaining an unfavorable result would a party search for relationships between an arbitrator and an opposing party in hopes of finding a "pretext for invalidating the award," Commonwealth Coatings, 393 U.S. at 151, 89 S.Ct. 337.

Tatung's attempt to vacate the award here demonstrates the dangers of its proposed rule. Tatung seeks to set aside an arbitration that took nearly two years to conclude. Tatung argues that it reasonably relied on its failure to receive a copy of Luening's disclosure form as evidence that no relationship existed.[5] However,

---

**3.** *Rogers v. Schering Corp.*, 165 F.Supp. 295 (D.N.J.1958), cited by Tatung, is inapposite. In that case, an award was vacated where an arbitrator disclosed a relationship with one of the parties, but the AAA deemed the relationship irrelevant and specifically chose not to inform the other party. *Rogers* held that this decision constituted a violation of arbitration due process. Although we do not foreclose the possibility that an administrator's failure to forward disclosures might under certain circumstances rise to the level of a due process violation, there is no evidence here of any intent by the AAA to withhold Luening's disclosure form. We nonetheless hope that this case will serve as a reminder to the AAA of the importance of forwarding to the parties all arbitrator disclosures.

**4.** Tatung argues that "neither Mr. Luening nor Lucent nor Lucent's counsel chose to make the relationship known directly to Tatung" and that "the disclosure obligation is one that runs to the adversely affected party, it is not enough that Luening merely informed the AAA of his relationship (or part of it) with Lucent and Lucent's attorneys."

**5.** Tatung points to the language of Article 7, paragraph 1 of the AAA's International Rules. See supra page 25–26. Tatung contends that

there is no evidence that it so relied. Moreover, this argument was not made in any papers below and was barely mentioned in the district court at oral argument on Tatung's motion to vacate. Judge Rakoff obviously regarded the argument as unpersuasive. So do we. As the district court found, Tatung knew of the AAA rules requiring disclosure by arbitrators, must have known of the form filed by Fiorito, its party-appointed arbitrator, and knew of the AAA's disclosure form submitted by Smith and eventually forwarded to Tatung. There was no persuasive reason for Tatung to have assumed that Luening had not submitted a similar form, and Tatung could have inquired into it at any time before or during arbitration. Notably, the AAA rules strongly encourage early investigations and objections.[6] Had Tatung asked the AAA for Luening's form or asked Luening himself about any relationship with Lucent, Tatung would have undoubtedly discovered the relationship now at issue—a relationship Luening and Lucent clearly had no intention of hiding— before the arbitration began. Instead, only after losing in arbitration and losing, on grounds different from those seized upon here, on a motion to dismiss Lucent's attempt to confirm the award, did Tatung "discover" Luening's relationship with Lucent and seek vacatur of the award on that ground. Even then, as the district court found, Tatung chose to remain ignorant of Luening's disclosure form. *Common-*

*wealth Coatings* does not require vacatur of an award under circumstances such as these, and Tatung's proposed rule would prove inimical to the purposes of arbitration. Accordingly, we affirm the district court's decision on this issue.

2. Luening and Smith's prior co-ownership of an airplane

■ Tatung next argues that Luening and Smith's co-ownership of an airplane from 1974 to 1990, which was never disclosed to the parties, requires vacatur of the award under *Commonwealth Coatings*. Tatung cites no case where the *Commonwealth Coatings* rule has been applied to an undisclosed relationship between arbitrators rather than between an arbitrator and a party. Furthermore, *Commonwealth Coatings* does not establish a per se rule requiring vacatur of an award whenever an undisclosed relationship is discovered. Rather, the Court observed that some "undisclosed relationships ... are too insubstantial to warrant vacating the award." *Commonwealth Coatings*, 393 U.S. at 152, 89 S.Ct. 337 (White, J., concurring). The Court explained that "an arbitrator's business relationships may be diverse indeed, involving more or less remote commercial connections with great numbers of people. He cannot be expected to provide the parties with his complete and unexpurgated business biography." *Id.* at 151, 89 S.Ct. 337. We have further explained that "a principal attraction of

this rule can be read to mean that the administrator will only communicate information "likely to give rise to justifiable doubts as to the arbitrator's impartiality or independence," and that if the administrator communicates nothing to the parties, the arbitrator must not have disclosed any potential conflicts.

6. Pursuant to article 8, paragraph 1, "[a] party wishing to challenge an arbitrator shall send notice of the challenge to the administra-

tor within 15 days after ·being notified of the appointment of the arbitrator or within 15 days after the circumstances giving rise to the challenge become known to the party." Similarly, article 25 states that "[a] party who knows that any provision of the rules or requirement under the rules has not been complied with, but proceeds with the arbitration without promptly stating an objection in writing thereto, shall be deemed to have waived the right to object."

arbitration is the expertise of those who decide the controversy," *Andros*, 579 F.2d at 701, and that "[f]amiliarity with a discipline often comes at the expense of complete impartiality," *Morelite Constr. Corp.*, 748 F.2d at 83. "Moreover, specific areas tend to breed tightly knit professional communities. Key members are known to one another, and in fact may work with, or for, one another, from time to time." *Id.*

Luening and Smith's co-ownership of an airplane ended more than a decade ago. As Judge Rakoff found, Tatung was on notice that both Luening and Smith (along with Fiorito) had previously worked at IBM. Tatung did not object to that fact prior to arbitration, nor did it choose to investigate that relationship more deeply at that time. Even if an undisclosed relationship between arbitrators could be cause for vacatur under certain circumstances, an issue we do not resolve here, Luening and Smith's co-ownership of an airplane more than a decade ago is simply too insubstantial to require vacatur.

B. Does Luening's Relationship with Lucent Require Vacatur of the Arbitration Award even though Luening Disclosed it to the AAA?

■ Relying on our opinion in *Morelite,* Tatung claims that Luening's relationship with Lucent is so strongly suggestive of bias that it warrants vacatur of the award even though it was disclosed by Luening to the AAA. Tatung argues that the district court thus erred by refusing to vacate the award.

In *Morelite,* after carefully weighing all the various interests at stake, we rejected both "appearance of bias" and "proof of actual bias" tests of evident partiality. 748 F.2d at 84. Instead we held that " 'evident partiality' within the meaning of 9 U.S.C. § 10 will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the

arbitration." *Id.* We added that "[i]n assessing a given relationship, courts must remain cognizant of peculiar commercial practices and factual variances." *Id.* "In this way," we explained, "the courts may refrain from threatening the valuable role of private arbitration in the settlement of commercial disputes, and at the same time uphold their responsibility to ensure that fair treatment is afforded to those who come before them." *Id.*

In this case, Judge Rakoff found that Luening had completed his service as an expert witness for Lucent by November 1999 and had submitted his final invoice by January 2000. The judge thus found that "Luening's prior relationship with Lucent had terminated in all material respects before Lucent's counsel solicited" his services as an arbitrator in this matter. *Lucent Techs., Inc.*, 269 F.Supp.2d at 405–06. Moreover, the court found that "Luening had no interest" in the outcome of the arbitration. *Id.* at 406. Accordingly, the court held that "[n]othing about the relationship 'provides strong evidence of partiality by the arbitrator' that would justify vacating the award." *Id.* at 406 (quoting *Morelite,* 748 F.2d at 85).

Although Tatung argues that motions were still pending in the Delaware case at the time the arbitration began and that Luening was thus still serving as an expert witness for Lucent while also acting as arbitrator in this case, the district court's findings of fact are not clearly erroneous. Moreover, accepting the court's finding that Luening's relationship with Lucent materially ended before Lucent appointed him as an arbitrator in this matter, we cannot say that "a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *Morelite,* 748 F.2d at 84. As we explained in *International Produce, Inc. v. A/S Rosshavet,* 638 F.2d 548, 552 (2d Cir.

1981), a shipping arbitration case in which we found no evident partiality, "arbitrators in important shipping arbitrations have typically participated in [many] prior maritime disputes, not only as arbitrators but also as parties and witnesses. They have therefore almost inevitably come into contact with a significant proportion of the relatively few lawyers who make up the New York admiralty bar."

### C. Should this Court Grant Discovery Regarding the Contested Relationships?

 "[A]n appellate court will not consider an issue raised for the first time on appeal." *Banco de Seguros del Estado v. Mutual Marine Office, Inc.*, 344 F.3d 255, 264 (2d Cir.2003) (quoting *O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55, 67 n. 5 (2d Cir.2002)). Tatung did not ask the district court for discovery regarding the relationships between Luening and Lucent and Luening and Smith, and we will not now consider Tatung's belated request to us for discovery. Moreover, even if we were to consider Tatung's request, Tatung has not presented the "clear evidence of impropriety" we have held necessary before granting post-award discovery into potential arbitrator bias. *Andros*, 579 F.2d at 702.

### III. Conclusion

We have considered all of Tatung's arguments and none justify reversal here. We affirm the judgment of the district court confirming the arbitration award in favor of Lucent.