**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3461
_____

GOLDMAN, SACHS & CO.,
SCOTT T. SHEFFER, and
ERIC W. GETTLEMAN

                      Appellants

v.

ATHENA VENTURE PARTNERS, L.P.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania

(E.D. Pa. No. 2-13-mc-00130)

District Judge: Honorable J. Curtis Joyner
_____

Argued: October 21, 2014

Before: AMBRO, FUENTES, and NYGAARD, *Circuit Judges*

(Opinion Filed:  September 29, 2015)

Kathryn E. Deal, Esq.
Edward M. Posner, Esq. (**ARGUED**)
Drinker Biddle & Reath

18th & Cherry Streets
One Logan Square, Suite 2000
Philadelphia, PA 19103
*Attorneys for Appellants*

David R. Moffit, Esq. (**ARGUED**)
Saul Ewing, LLP
1200 Liberty Ridge Drive
Suite 200
Wayne, PA 19087
*Attorney for Appellee*

---

OPINION OF THE COURT

---

FUENTES, *Circuit Judge*.

Goldman Sachs and Athena Venture Partners participated in an arbitration to settle a $1.4 million investment-related dispute. In that proceeding, Athena asserted claims of misrepresentation, securities fraud, common law fraud and breach of fiduciary duty, among others. Following a nine-day arbitration hearing, conducted under Financial Industry Regulatory Authority ("FINRA") rules, the panel ruled in favor of Goldman. After the award, Athena conducted a background investigation on Demetrio S. Timban, one of the panel members. The investigation revealed that Timban failed to make disclosures regarding numerous regulatory complaints against him.

On a motion to vacate the award, based on these non-disclosures, the District Court ruled in favor of Athena and

ordered a new arbitration hearing. The District Court reasoned that Athena's rights were compromised by an arbitrator who misrepresented his ability to serve on the arbitration panel and then abandoned the panel before its final ruling. Because we find that Athena waived its right to challenge the arbitration award, we reverse the District Court's order vacating the award.

## I.

Athena is a limited partnership that invested in several funds through Goldman. In 2007, Goldman approached Athena with an investment opportunity in "Liquidity Partners," describing it as a "terrific, low principal risk, short term investment with potential higher yields than other available cash investments."[1] In addition, Goldman explained that the investment was "a diverse portfolio of very safe, AAA-rated debt securities."[2]

In supposed reliance upon these representations, Athena invested $5 million in the Liquidity Partners fund. By late 2008, however, Athena incurred about $1.4 million in losses on the investment. Believing that Goldman misrepresented the risks associated with the investment, Athena initiated arbitration proceedings under the parties' Subscription Agreement. The Agreement specified that FINRA[3] rules and regulations applied to the arbitration. A

---

[1] JA-5.

[2] *Id.*

[3] FINRA is "an independent, not-for-profit organization authorized by Congress to protect America's investors by making sure the securities industry operates fairly and

3

three-member panel of arbitrators heard evidence in separate sessions in November 2011 and October 2012. After the first panel session, FINRA disclosed to the parties that one of the panel members, Demetrio S. Timban, Jr., had been charged with the unauthorized practice of law in connection with an appearance in a New Jersey municipal court.[4] At this point, neither party, nor FINRA, objected to Timban's continued participation on the panel. Likewise, neither party conducted further due diligence to follow up on this disclosure. Following these hearings, the panel issued its written decision finding in favor of Goldman. Two of the panel members signed the award, but Timban did not. Under the Subscription Agreement, only two members of the panel needed to sign the award for it to have binding effect.

---

honestly." FINRA (last visited Aug. 31, 2015), https://www.finra.org/about.

[4] Timban's verbatim disclosure to FINRA stated: "In September of 2011, I was served with a complaint from the State of New Jersey, Case #11-10-01215-I charging me with the unauthorized practice of law. The specific incident in question involved my representation of a family frien[d] in a local municipal court in Evesham Township. While representing the family friend in the matter, I failed to make a motion for admission pro hac vice because while I am admitted in both Michigan and New York, I am not admitted in New Jersey. I take full responsibility for the oversight and I am working with the State to settle this and I am confident this matter will be expunged from my record. I have also informed the state bars of Michigan and New York. I am fully confident that this will in no way affect my ability to be fair and impartial in my duties to FINRA." JA-327.

After the award, Athena conducted a background check on Timban purportedly based on his failure to sign the award. This background check revealed that Timban's sole disclosure was misleading, and that he had failed to disclose additional legal troubles. With respect to his disclosure, Timban represented his unauthorized practice as a one-off incident. In reality, Timban maintained an office in Cherry Hill, New Jersey for many years, including from 2010-12; he represented debtors in bankruptcy courts in both Pennsylvania and New Jersey; and he had many complaints lodged against him for the unauthorized practice of law in 1999, 2002, 2004, and 2006. In other words, when Timban described his unauthorized practice charge as a simple "oversight," he misrepresented the true scope of his problems.

As to the subsequent legal issues, first, in April 2012, a formal complaint against Timban was filed with the Attorney Discipline Board for the State of Michigan, citing Timban for issuing bad checks totaling $18,145, with intent to defraud. This allegation constitutes not only a violation of the Michigan Rules of Professional Conduct, but the conduct is considered a felony criminal offense under Michigan law.

Second, in July 2012, another formal complaint against Timban was filed with the Attorney Discipline Board for the State of Michigan. This complaint cited Timban for "engaging in conduct involving dishonesty, fraud, deceit, misrepresentation, or violation of the criminal law" as a result of the unauthorized practice of law in the state of New Jersey.

Third, in October 2012, Timban entered into a stipulation with the Grievance Administrator for the Attorney Discipline Board for the State of Michigan, pleading no contest to the allegations of the two formal complaints. He agreed to a 175-day suspension of his license to practice law.

Neither Timban, nor FINRA, disclosed any of these issues, which occurred prior to the second arbitration session, to the parties at any time. In November 2012, days after the parties submitted post-hearing briefs to the panel, the Attorney Discipline Board for the State of Michigan entered an order suspending Timban.

After Athena conducted this background check and unearthed these additional legal issues, it filed a motion to vacate the arbitration award. In the District Court, Athena argued that vacatur was proper because Timban's conduct and his failure to disclose violated both FINRA's rules and the parties' agreement to arbitrate. The District Court agreed and, therefore, granted Athena's motion to vacate and denied Goldman's application to confirm the arbitration award. Holding that Timban's initial disclosure was "so grossly misleading and incomplete," the District Court rejected Goldman's argument that Athena waived its right to challenge the panel's award. In so finding, the District Court held that FINRA failed to provide the parties with three qualified arbitrators and that vacatur was the proper remedy under the Federal Arbitration Act, 9 U.S.C. § 10(a)(3), and (a)(4). Accordingly, the District Court vacated the arbitration award and remanded for rehearing before a new panel.

## II.

Goldman raises two main issues on appeal: (1) the District Court erred in holding Athena did not waive its right to challenge the arbitration award; and (2) the District Court erred in vacating the award.[5]

---

[5] The District Court had subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 78aa(a)

**A.**

Goldman argues that, by waiting to challenge Timban's participation on the panel until after the award, Athena waived its right to seek vacatur of the award. To determine whether Athena waived this right, we must decide how waiver applies in the arbitration context, a question of first impression in this Circuit.[6]

Although many circuits generally agree that a party waives a claim based on the conduct of an arbitrator if the party fails to raise those concerns prior to or during the arbitration hearings, most have recognized that a blanket waiver rule is inappropriate. For instance, in the Sixth Circuit, waiver applies only if the party knew of the facts suggesting bias during the proceeding.[7] The Ninth Circuit, along with several others, applies a constructive knowledge standard, finding waiver where a party "has constructive

---

because the underlying arbitration included federal securities law claims. We have jurisdiction over this matter under 28 U.S.C. § 1291 and 9 U.S.C. § 16(a) because this is an appeal of the District Court's final order vacating an arbitration award.

[6] *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 249 (3d Cir. 2013) ("Our Court has yet to explain how waiver applies in the arbitration context.").

[7] *See Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1359 (6th Cir. 1989) (applying waiver only if "[a]ll the facts now argued as to [the] alleged bias were known . . . at the time the [arbitrator] heard their grievances" (quoting *Early v. E. Transfer*, 699 F.2d 552, 558 (1st Cir. 1983))).

7

knowledge of a potential conflict but fails to timely object."[8] The Ninth Circuit viewed this as a better approach in light of its "policy favoring the finality of arbitration awards."[9]

Constructive knowledge is defined as the "[k]nowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person."[10] Our sister circuits have interpreted constructive knowledge in this context to mean that a complaining party either knew or should have known of facts indicating partiality or other misconduct of an arbitrator. Relevant to this point, the First Circuit commented that a party "which was put on notice of the risk when it signed the contract [and] chose not to inquire about the backgrounds of the Committee members either before or during the hearing" waived the right to challenge the decision.[11] Likewise, the Eighth Circuit applied constructive knowledge where a party "did not have full knowledge of all the relationships to which they now object, [but] they did have concerns about [the arbitrator's] impartiality and yet chose to have her remain on the panel rather than spend time and money investigating further until

---

[8] *Fid. Fed. Bank, FSB v. Durga Ma Corp.*, 386 F.3d 1306, 1313 (9th Cir. 2004); *see also Lucent Techs. Inc. v. Tatung Co.*, 379 F.3d 24, 28 (2d Cir. 2004); *JCI Commc'n, Inc. v. Int'l Bhd. of Elec. Workers, Local 103*, 324 F.3d 42, 52 (1st Cir. 2003); *Kiernan v. Piper Jaffray Cos.*, 137 F.3d 588, 593 (8th Cir. 1998).

[9] *Fid. Fed. Bank, FSB*, 386 F.3d at 1313.

[10] Black's Law Dictionary 888 (8th ed., 2004).

[11] *JCI Commc'n, Inc.*, 324 F.3d at 52.

losing the arbitration."[12]  The Second Circuit has stated that "where the complaining party should have known of the relationship . . . or could have learned of the relationship just as easily before or during the arbitration rather than after it lost its case," constructive knowledge existed and resulted in waiver.[13]  Constructive knowledge in the arbitration context reasonably requires parties to "exercise as much diligence and tenacity in ferreting out potential conflicts . . . []in selecting the panel[] as they do . . . []once attacking the award became the sole reason to research the arbitrators[]."[14]  Moreover, where a party is capable of "thoroughly and systematically digging for dirt on each of the three arbitrators," it should do so prior to being solely motivated by the chance of vacating the award.[15]

---

[12] *Kiernan*, 137 F.3d at 593.

[13] *Lucent Techs. Inc.*, 379 F.3d at 28 (internal citation and quotation marks omitted).

[14] *Stone v. Bear, Stearns & Co., Inc.*, 872 F. Supp. 2d 435, 457 (E.D. Pa. 2012).

[15] *Id.* at 440; *see also Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 683 (7th Cir. 1983) ("It is true that the disclosure requirements are intended in part to avoid the costs of background investigations. But this is a $10 million case. If Leatherby had been worried about putting its fate into the hands of someone who might be linked in the distant past to the adversary's principal, it would have done more than it did to find out about [the arbitrator]. That it did so little suggests that its fear of a prejudiced panel is a tactical response to having lost the arbitration.").

Indeed, we came close to adopting the "constructive knowledge" standard in a previous case. In *Freeman v. Pittsburgh Glass Works, LLC*, the appellant challenged an arbitration award based on an arbitrator's failure to disclose a relationship to one of the parties to the arbitration.[16] The district court denied the appellant's motion to vacate the award, finding the nondisclosures were immaterial and insubstantial. While neither party raised the waiver issue, we addressed it and opined that "[t]he Ninth Circuit's approach has considerable merit: a party waives later challenges only if it either knew or should have known of the facts indicating partiality."[17] We view this approach favorably because it "allows a party to challenge an arbitration when it had no way of discovering the arbitrator's bias beforehand"[18] while, "at the same time, it encourages investigation by making the parties accountable for information they should have known. Moreover, it prevents the losing party from receiving a second bite at the apple."[19] The rationale for applying constructive knowledge in the arbitration context makes good sense. It both encourages parties to conduct adequate due diligence prior to issuance of the award and promotes the arbitration goals of efficiency and finality. Therefore, we conclude that if a party could have reasonably discovered that any type of malfeasance, ranging from conflicts-of-interest to non-disclosures such as those at issue here, was afoot during the hearings, it should be precluded from challenging the subsequent award on those grounds.

---

[16] 709 F.3d at 246.

[17] *Id.* at 250 (internal quotation marks omitted).

[18] *Id.*

[19] *Id.*

10

In this case, Goldman argues that Athena waived its claims to vacate the award. Specifically, Goldman contends that Timban's initial disclosure, while incomplete, provided the specific charge against him and the docket number for his case. Hence, Athena could have conducted, at the very least, a cursory background check as early as April 2012. Athena, however, asserts that Timban's incomplete disclosure, coupled with his failure to disclose the additional legal issues, weighs against finding waiver. Because Timban's subsequent legal issues occurred after his initial disclosure, the argument goes, Athena could not have waived its right to vacatur. Even if it had done a background check, these other issues could not have been identified. We disagree. While we appreciate Athena's argument with respect to the timing of the subsequent legal issues, it does not change the fact that Athena should have raised a challenge based solely on the initial disclosure.

Applying the constructive knowledge standard, the question becomes whether Athena knew or could have known about the extent of Timban's unauthorized-practice-of-law charge. We believe it could have. The initial disclosure, deficient as it was, provided enough alarming information to compel the parties to do further research on Timban. Or at least such a disclosure should have provoked alarm. Indeed, the essence of an unauthorized-practice-of-law charge is that a person has made serious misrepresentations to a court of law. At bottom, this should have been enough to set off sirens for both parties, irrespective of the circumstances behind the charge. That his disclosure was deficient, and that he failed to make the additional disclosures, certainly exacerbates concerns regarding Timban's character and fitness to serve as an arbitrator—but the crux of the issue before us is that Athena could have expressed the same concerns after the first disclosure. Had Athena conducted the

11

same diligence after Timban's disclosure, it would likely have discovered not only the true extent of Timban's unauthorized practice of law, but that his disclosure to FINRA itself was false. Indeed, Athena attached a probable cause statement to its motion to vacate, which revealed that Timban had been practicing out of an office in Cherry Hill, New Jersey and that the New Jersey Committee on Unauthorized Practice of Law had received complaints about Timban in 1999, 2000, 2002, and 2004.[20] Athena, however, failed to look into the matter further until after it lost in arbitration.

This is the paradigmatic case of the "sore loser," so to speak, trying for a second bite at the apple—and the exact type of case the law disfavors. A party should not be permitted to game the system by rolling the dice on whether to raise the challenge during the proceedings or wait until it loses to seek vacatur on the issue. Nor should a party "wait[] until [it] los[es] and then almost immediately beg[i]n scouring the internet for anything that might suggest one arbitrator or another was biased against it."[21] This is all to say, under the constructive knowledge standard, a party may not conduct a background investigation on an arbitrator after the award with the sole motivation to seek vacatur. If it were any other way,

---

[20] The District Court itself stated that it "would be inclined to agree with [Goldman's] argument that, by failing to object or request Mr. Timban's removal following the issuance of his updated disclosure in March, 2012, [Athena] waived [its] right to now challenge the panel's award, were it not for the fact that it was so grossly misleading." JA-21. Had it, however, applied the constructive knowledge standard we now adopt, the District Court may have also found waiver.

[21] *Stone*, 872 F. Supp. 2d at 456.

12

arbitrations would cease to have finality and result in endless hearings within hearings.

Accordingly, because Athena had constructive knowledge of Timban's insufficient disclosure, we conclude that it waived its right to challenge the award. Because we hold that Athena waived its right to vacatur, we need not address Goldman's second argument that FINRA failed to provide the parties with three qualified arbitrators.

We would be remiss not to mention that even had Athena raised the issue during the panel hearing, it is unclear under which statutory ground it could have called for Timban's removal. FINRA's rules effectively isolated Timban from both disqualification prior to empanelment and removal once the hearings began. We thus agree with the District Court's sentiments that "it [finds ] remarkable that neither of these parties nor, more particularly, FINRA saw fit to conduct any investigation or due diligence into Mr. Timban's qualifications after he revealed that he was the subject of a complaint by the State of New Jersey for unauthorized practice."[22] We further agree that FINRA's June 2013 announcement that it would conduct annual background checks on its arbitrators and additional review before appointment is "too little too late" in this case.[23] Nevertheless, this potential inequity with respect to FINRA rules does not alter our analysis on waiver.

---

[22] JA-21.

[23] *See id.*

## III.

For all the reasons stated above, we reverse the District Court's order granting vacatur and remand for further proceedings with respect to Goldman's motion to confirm the arbitration award.